In the Matter of Dave J. BINDL, a/k/a
David J. Bindl, d/b/a A & B
Construction Co., Debtor.

Bankruptcy No. MM11–81–00921.

United States Bankruptcy Court,
W. D. Wisconsin.

July 28, 1981.

Kenneth Doran, Madison, Wis., for Dave J. Bindl.

Roy L. Prange, Jr., of Ross & Stevens, S. C., Madison, Wis., for Production Credit Ass'n of Baraboo.

Gerald T. Warzyn, of Koritzinsky, Neider, Langer & Roberson, Madison, Wis., for Equico Lessors, Inc.

OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

Dave Bindl, d/b/a A & B Construction Co., filed a Chapter 11 petition in bankruptcy May 28, 1981. Bindl is a dairy farmer

whose only regular income is from the sale of milk to Grande Cheese Company. At the time the petition was filed the milk check was for approximately $14,200 a month and was subject to the following monthly assignments:

| | |
|---|---:|
| Production Credit Association | $ 7,625.00 |
| Farmers Home Administration | 1,000.00 |
| Equico | 1,846.95 |
| Federal Land Bank | 835.00 |
| Farm Loan Service | 357.43 |
| | $11,664.38 |

Bindl has requested the court to terminate the various assignments so that he may use the funds for operating capital. A debtor in possession has most of the powers of a trustee in bankruptcy. 11 U.S.C. § 1107. If the creditors' milk check assignments are unperfected they may be avoided by the debtor in possession pursuant to 11 U.S.C. § 544.

PCA filed a financing statement with the Richland County Register of Deeds on March 26, 1981 and Sauk County Register of Deeds on March 20, 1981 which covers in pertinent part: "all livestock, all livestock feed and grain, all milk and accounts receivable from milk now owned or hereafter acquired."

Equico Lessors have agreements signed by Bindl which state:

as additional security for the performance of the obligation of the undersigned pursuant to said lease, the undersigned does hereby sell, assign, transfer and set over unto Equico Lessors, Inc. (address omitted), its successors and assigns, all the right, title and interest of the undersigned to Grande Cheese.

The two Equico milk assignments provided to the court are for $468.34 per month and $837.36 per month. The debtor in possession and Equico agree a third assignment to Equico was made though no copy of it is in evidence. The debtor's application states that Equico receives $1,846.95 per month. The only financing statement filed by Equico covers equipment.

FHA has not made an appearance in this matter but the record shows a financing statement which describes in pertinent part: "the following types or items of collateral, including proceeds and products thereof, (a) Crops, livestock, other farm products" which was filed with the Richland County Register of Deeds February 22, 1974. No continuation statement was filed. FHA's security interest has lapsed because the filing is over five years old. Wis.Stat. 409.403(2).

Farm Loan Service filed a financing statement with the Richland County Register of Deeds October 8, 1979 which covers "2 Rex Chopper Boxes w tandem running gears, Gehl 600 Chopper w/2 row corn head and hay head" and their products and proceeds. A copy of their milk check assignment is in evidence. It is apparent the financing statement does not cover the milk check assignment.

The only creditor which has perfected its interest in Bindl's milk check by filing a proper financing statement is PCA. Equico argues that it and creditors with smaller assignments are not required to file in order to perfect their security interest pursuant to Wis.Stat. 409.302(1)(e) [U.C.C. § 9–302(1)(e)] which states:

(1) a financing statement must be filed to perfect all security interests except the following . . .

(e) An assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor.

For the filing exception to apply it must initially be determined that the interest in the proceeds from the sale of milk is an account as defined in Wis.Stat. 409.106 which states that: " 'Account' means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." Bindl transferred his right to payment for the sale of milk. Milk is a good as defined in Wis.Stat. 409.105(1)(h). The assignment document is not a chattel paper as defined in Wis.Stat. 409.105(1)(b) nor is it an instrument as defined in Wis.Stat. 409.105(1)(i) because that definition excludes security

agreements. Equico's agreement is then an "assignment of account."

Equico argues that its assignments do not constitute a significant part of the outstanding accounts of the debtor. Equico's assignments comprise approximately 13 percent of the debtor's monthly income and assign a total sum of $113,758.68 over their terms.

Although many courts have applied § 9–302(1)(e) of the UCC to determine whether a filing was required to perfect a security interest in accounts, none of the reported cases dealt with a continuing assignment of a portion of a milk check. Equico relies on *Standard Lumber Co. v. Chamber Frames, Inc.*, 317 F.Supp. 837, 8 U.C.C. 139 (Ark. 1970). In *Standard Lumber*, the debtor had assigned six accounts receivable totaling 16 percent of the debtor's accounts receivable on the date the account was transferred. The specific account in dispute in *Standard Lumber* was in the sum of $2,212.20 and represented approximately 11.5 percent of the total accounts receivable on the date it was assigned. The Arkansas court concluded that the assignment of the account was not a significant part of the outstanding accounts receivable of Chamber Frames.

Before adopting a fixed percentage as the basis for determining whether an assigned account is a "significant part" of the assignor's outstanding account, the rationale for the exception to the general rule of filing must be considered. Several possible reasons for the exception suggest themselves. First, if the account or accounts transferred were small enough, there would be little or no anticipation of a subsequent transfer and the notice afforded by filing would never be utilized by a purchaser or transferee. Second, a subsequent transferee of accounts in a normal commercial accounts financing situation who was afforded notice might be reasoned to be unconcerned by the prior position of a competing transferee if the amount transferred was negligible. Third, as suggested by the official comment to the UCC, in isolated or casual assignments filing is an undue burden on the unsophisticated transferee.

There may well be more or different reasons for the exception, although none have been suggested or articulated in the literature with which I am familiar.

The other exception to filing contained in Wis.Stat. 409.302(1) which arguably deals with the significance of the transfer is that afforded consumer goods under Wis.Stat. 409.302(1)(d). In making that exception the Wisconsin Legislature departed from open ended language of the official text of the UCC to effectively define "significant" by placing an upper limit of $500.00 on purchases which would be exempt from filing.

Against the background of the possible reasons for the exception to required filing the present case offers little support for its inclusion. Milk proceeds checks are regularly subject to assignment in varying amounts as the facts of this case demonstrate. First, the presence of subsequent transferees is common. Second, notice to subsequent transferees would in all but the most insignificant of prior assignments be a reasonable consideration. The multiplicity of assignees and the continuing nature of the assignments augur for the completeness of notice. Such notice cannot be assumed to be available from the account debtor (dairy). Dairies are no longer necessary parties to such assignments and farmers are not precluded from changing dairies or selling to more than one dairy. Finally, none of the assignees in this case are unsophisticated. Each is in the business of agricultural financing and sufficiently familiar with filing to file a financing statement on equipment. Each chose not to file on the milk assignment and did so at its peril.

I am not compelled by the suggestion that 16 percent represents the bottom limit of a significant part of accounts assigned. Farm Loan Service has been assigned accounts in the amount of $7,159.44; Federal Land Bank, $89,700.00; Equico, $113,758.68; and FHA, $25,000. None of those sums are on their face insignificant. Nor are they insignificant as a part of the debtor's annual gross income from milk of $170,400.00. In light of the only other Wisconsin exception to notice filing which is based on

small transfers, any assigned account over $500.00 may well be significant.

 Absent a properly perfected security interest in the assigned accounts, Equico, FHA, Federal Land Bank and Farm Loan Service have no interest in the cash paid on the accounts. That cash may be used in the operation of debtor's business. Not being proceeds of collateral, except to the extent of PCA's security interest and subject to PCA's assignment, the cash does not constitute cash collateral in the hands of the debtor.

Upon the foregoing which constitute my finds of fact and conclusions of law and subject to the limitation expressed therein, the application of the debtor is granted.