**In re LILES AND RAYMOND, Debtor.**

**Bankruptcy No. 181–02866.**

United States Bankruptcy Court,
M.D. Tennessee.

June 22, 1982.

Jane J. Buffaloe, Nashville, Tenn., for debtor.

Margaret M. Huff, Nashville, Tenn., for United States.

## MEMORANDUM

GEORGE C. PAINE, Bankruptcy Judge.

This matter is before the court on the debtor Liles and Raymond's application requesting the court to allow the debtor-in-possession to use cash collateral consisting of milk proceeds assigned to Farmers Home Administration (hereinafter "FmHA") pursuant to 11 U.S.C. § 363(c)(2). FmHA opposes the debtor's application on the grounds that the milk proceeds assigned to FmHA are not property of the estate and that, even if the proceeds are property of estate, FmHA has not been provided adequate protection under 11 U.S.C. § 363(e). A hearing on the debtor's application was held on May 5 and 12, 1982. After consideration of the evidence presented at this hearing, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that the debtor's complaint for the use of cash collateral should be granted.

The following shall constitute findings of fact and conclusions of law pursuant to Rule 752 of the Federal Rules of Bankruptcy Procedure.

The debtor Liles and Raymond is a partnership engaged in the operation of a dairy farm. On June 10, 1981, the debtor received a loan from FmHA in the total amount of $380,094.84 which was evidenced by three promissory notes. FmHA obtained as security for this debt a second mortgage on the debtor's real estate and a security interest in the debtor's equipment, livestock and other farm products. The security agreement specifically granted FmHA a security interest in "[A]ll livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, fur bearing animals, other animals produced or used for commercial purposes, other farm products, and supplies, now owned or hereafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto." The agreement further provided that FmHA's security interest would extend to all proceeds and products of the aforementioned collateral. This agreement was perfected by the filing of a financing statement in the county in which the property was located.

Liles and Raymond also executed a milk assignment on June 10, 1981, providing that, in consideration for the $380,094.84 loan from FmHA, milk proceeds in the amount of $8,100.00 per month would be paid to FmHA by the purchaser of the debtor's milk until FmHA released or suspended this assignment in writing. Southern Milk Sales, Inc., the purchaser of the debtor's milk, accepted this assignment on June 17, 1981, and agreed to remit these proceeds to FmHA until they were notified of the termination of the assignment. In

consideration of Southern Milk Sales' acceptance of the assignment, FmHA released any lien or security interest it possessed in the dairy products sold by the debtor to Southern Milk Sales. No evidence was presented as to whether this assignment had been properly perfected in accordance with state law.

On September 11, 1981, the debtor filed a voluntary Chapter 11 petition in this court. The debtor-in-possession and FmHA thereafter entered into an agreed order in which FmHA permitted the debtor-in-possession to use the assigned milk proceeds to maintain the farm operation. On February 16, 1982, FmHA terminated this agreement. FmHA's action prompted the debtor-in-possession to file this application seeking court authorization to continue to use these milk proceeds.

■ Under Tennessee law, the assignment of the debtor-in-possession's right to future milk proceeds to FmHA created a security interest on behalf of FmHA. The Tennessee Uniform Commercial Code characterizes the debtor-in-possession's right to future milk proceeds as contract rights.[1] Section 47-1-201 of the Tennessee Uniform Commercial Code specifically defines the term "security interest" to include any interest of a *buyer of* accounts, chattel paper or *contract rights.* Section 47-9-102 further states that the interest of any buyer of contract rights comes within the purview of Chapter 9 of the Tennessee Uniform Commercial Code, which governs the creation and perfection of secured transactions.[2] The comments to § 47-9-102 emphasize that Chapter 9 includes all sales of contract rights *whether intended for security or not* unless excluded by § 47-9-104(f).[3] By definition, therefore, an outright purchaser of contract rights has a security interest in the contract rights which he obtains.[4] *See Major's Furniture Mart, Inc. v. Castle Credit Corp.,* 602 F.2d 538, 542–543 (3d Cir.1979); *George W. Ultch Lumber Co. v. Hall Plastering, Inc.,* 477 F.Supp. 1060, 1064–1066 (W.D.Mo.1979); *In the Matter of Binde,* 13 B.R. 148, 149–151 (Bkrtcy.W.D.Wis.1981). *See also J. White and R. Summers, Handbook of the Law Under the Uniform Commercial Code* § 22–8, at 892–893 (2d ed. 1980); McDonnell, "The Scope of Article 9," 1 U.C.C.Rep.Serv. (M.B.) § 5A.08[2] (1982); Coates, "Farm Secured Transactions Under the U.C.C.," 1C U.C.C.Rep.Serv. (M.B.) § 27.04 (1982).

■ Since this milk assignment constitutes a security interest under the Tennessee Uniform Commercial Code, FmHA must conform with the perfection requirements of the Tennessee Code in order to achieve the status of a secured creditor. Section 47-9-302 defines the requirements for perfecting a security interest in the sale of contract rights as follows:

---

1. Section 47-9-106 of the Tennessee Code defines the term "contract right" as including "any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper." The debtor-in-possession's right to future milk proceeds certainly must be included within that definition.

2. Section 47-9-102 provides in pertinent part:
   "*Policy and Scope of Chapter*—(1) Except as otherwise provided in § 47-9-103 on multiple state transactions and in § 47-9-104 on excluded transactions, this chapter applies so far as concerns any personal property and fixtures within the jurisdiction of this state:

   .    .    .    .    .

   (b) to any sale of accounts, contract rights or chattel paper."   '

3. The parties have not suggested nor has the court found that the contract rights in question are excluded from coverage under Chapter 9 of the Tennessee Uniform Commercial Code by § 47-9-104(f).

4. FmHA contends that the milk assignment at issue completely divested the debtor-in-possession of all interest in the assigned milk proceeds. To support this proposition, FmHA relies on the case of *Harris v. Farmers Home Administration (In re Bargstedt),* 7 B.R. 556 (Bkrtcy.M.D.Ga.1980), which held that milk proceeds assigned by the debtor were not property of the estate. The court in *Harris v. Farmers Home Administration,* however, based its conclusion on relevant Georgia law. This court's decision is based upon Tennessee law and, therefore, the analysis in *Harris v. Farmers Home Administration* is inapplicable to this case. .

*"When filing is required to perfect security interest—Security interest to which filing provisions of this chapter do not apply.—*(1) A financing statement must be filed to perfect all security interests except the following:

. . . . . .

(e) an assignment of accounts or contract rights which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts or contract rights of the assignor;"

■ In the present case, the debtor assigned a substantial portion of its future contract rights in milk proceeds to FmHA. The assignment would continue indefinitely until released or suspended by FmHA. The testimony was uncontradicted that these assigned milk proceeds represented a major portion of the debtor's gross income and that, without these milk proceeds, the debtor could not continue its Chapter 11 reorganization. For these reasons, the milk assignment to FmHA cannot be considered an insignificant assignment of contract rights. *See In the Matter of Binde*, 13 B.R. at 150. FmHA was, therefore, required to file a financing statement pursuant to § 47–9–302 of the Tennessee Code in order to perfect its security interest in these contract rights. FmHA offered no evidence that such a financing statement was filed. The court accordingly concludes that FmHA's security interest is unperfected and thus FmHA is not entitled to adequate protection pursuant to 11 U.S.C. § 363(e).[5]

The court does not address at this time, because not raised, the issue of whether FmHA's perfected security interest in the debtor's other property is adequately protected. From the evidence presented at the hearing of this matter, FmHA's protection is apparently minimal. The court is also concerned by the fact that the debtor has

not as of the present date filed a plan of reorganization, even though the debtor's Chapter 11 petition has been pending for more than eight months. These issues, however, are not before the court at this time.

 For the reasons stated above, the court will enter an order granting the debtor-in-possession's application to use the milk proceeds assigned to FmHA pursuant to 11 U.S.C. § 363(c)(2). The order will further provide that the debtor-in-possession make available to FmHA a detailed accounting of the expenditure of all funds released pursuant to this order.

IT IS, THEREFORE, SO ORDERED.

---

5. The security agreement entered into between the debtor and FmHA on June 10, 1981, which FmHA properly perfected, was conceivably broad enough to encompass the debtor's future milk proceeds. FmHA, however, terminated any security interest created under this agreement when, on June 17, 1981, FmHA released any security interest it possessed in the debtor's milk proceeds in consideration for Southern Milk Sale's acceptance of the milk assignment to FmHA by the debtor.