**NATIONAL ACCEPTANCE COMPANY OF AMERICA, Plaintiff,**

v.

**Arthur DOEDE and Marlyn Doede, Defendants.**

Civ. A. No. 75–C–90.

United States District Court, W. D. Wisconsin.

March 13, 1978.

Robert D. Martin, Madison, Wis. and Michael A. Reiter, Chicago, Ill., for plaintiff.

Francis J. Podvin, Wisconsin Rapids, Wis. and Louis Molepske, Stevens Point, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge, sitting by designation.

The plaintiff, National Acceptance Corporation of America ("NACA") has moved for partial summary judgment on its claim that the defendants Arthur and Marlyn Doede are liable for conversion of certain property in which NACA claimed a security interest and has also moved for recovery of certain costs and expenses. For the reasons hereinafter stated, the motion for summary judgment is denied and the motion for costs and expenses is granted.

From the pleadings, affidavits, and depositions on file the court finds the following facts. Two machines used for nailing together wooden pallets were sold by the Doede Lumber Company, Inc. ("Doede") (of which the defendants were the president and secretary), to the Bulk Packaging Corporation ("Bulk"). To secure payment of the purchase, Bulk granted to Doede a security interest in various pieces of equipment owned by Bulk including the two nailing machines. The security agreement also granted to Doede an interest in "all accessions to, and spare and repair parts, special tools and equipment and replacements for, and proceeds of all or any part of the foregoing" pieces of equipment. Timely financing statements were filed covering "pallet mill operation and manufacturing equipment" and including the same list of equipment mentioned in the security agreement. This security agreement was subsequently assigned by Doede to the defendants individually.

In early 1974, Bulk, acting with the permission of the defendants, sent the two nailing machines to Atlantic Coast Industries ("Atlantic") in Virginia for the purpose of having the machines repaired and refurbished. Some parts of the machines were replaced with other parts and certain alterations were made and new pieces of equipment were attached. The plaintiff and the defendants differ on the extent to which the nailing machines and the new equipment were formed into a single unit for performing functions other than those performed by the original two nailing machines. The plaintiff contends that the new equipment attached to the nailing machines was comprised mostly of separable components which were easily removable from the entire unit. However, the defendants maintain that the nailing machines and the new equipment were formed into an integrated whole and could not be separated without doing substantial damage to the nailing machines themselves. The parties also differ on the extent to which the equipment added to the nailing machines was in the nature of repairs and replacements of existing parts rather than completely new and separate equipment.

When Atlantic completed its work with respect to the two nailing machines and the other equipment, the nailing machines and other equipment were shipped to West Central Corporation ("West") of Stevens Point, Wisconsin, in two separate shipments, one on March 28, 1974, and one on April 20, 1974. NACA paid Atlantic for the machines and other equipment on behalf of West on April 26, 1974, and was given a security interest in certain pieces of equipment by West on March 14, 1974. On March 18, 1974, NACA filed a financing statement covering "[a]ll of Debtor's [West's] presently owned and existing and hereafter acquired . . . equipment

. . . and all proceeds and products of and from and accessions to the foregoing collateral."

Subsequent to the transfer of the nailing machines from Atlantic to West, the defendants' debtor, Bulk, defaulted on its debt to the defendants arising from the purchase by Bulk of the nailing machines. The defendants secured a judgment against Bulk which was executed against the nailing machines and other equipment then in possession of West. The machines and other equipment were then purchased by the defendants at a sheriff's sale.

*Plaintiff's Motion for Partial Summary Judgment*

Based on these facts the plaintiff seeks to have the defendants held liable for converting the nailing machines and other equipment in which the plaintiff maintains it held a valid and prior security interest. In this motion NACA is seeking judgment only as to the equipment added by Atlantic to the nailing machines, herein referred to as the "other equipment". This other equipment consisted of the following:

1. At least two ACI feed tables;
2. An automatic half pallet ejector;
3. A stringer feeder;
4. An automatic pallet turner; and
5. An automatic board feeder.

NACA has urged two grounds in support of its motion for partial summary judgment, both of which attempt to establish that the defendants had no valid and perfected security interest in the other equipment. First, the plaintiff has alleged that the other equipment is not included within the security agreement and financing statement descriptions of items in which the defendants claimed a security interest. Second, the plaintiff has alleged that even if the other equipment was included in the descriptions, the defendants' security interest in the other equipment never attached because the defendants' debtor, Bulk, never acquired rights in the other equipment. Each of these issues will be addressed in turn.

To be enforceable a security agreement must contain a description of the collateral covered by the agreement. Wis.Stat. § 409.203. The test for determining the adequacy of a security agreement description of collateral is set forth in Wis.Stat. § 409.110: "For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." The official UCC Comment to Article 9–110 of the UCC further specifies the manner in which the description requirement is to be applied: "Under this rule courts should refuse to follow the holdings often found in the older chattel mortgage cases, that descriptions are insufficient unless they are of the most exact and detailed nature, the so-called 'serial number' test."

The security agreement between Bulk and Doede contained both broad and specific terms of description of the collateral subject to the agreement. The agreement contained a list specifying certain pieces of equipment, including the two nailing machines, subject to the agreement. In addition, the agreement also covered "all accessions to, and spare and repair parts, special tools and equipment and replacements for, and proceeds of all or any part of the foregoing" pieces of equipment. (Marlyn Doede Deposition Exhibit 1.) NACA believes this description to be inadequate because "[t]here is no description or reference whatsoever to any of the items which make up The Other Equipment" and because the security agreement "does not cover (by item, type, or otherwise) The Other Equipment sold by Atlantic to West." Responding to this assertion of inadequacy of description, the defendants maintain that a factual issue exists as to whether the other equipment constitutes repairs, replacements of parts, or accessions to the original nailing machines, which categories of items are covered explicitly by the Doede-Bulk security agreement description of collateral.

The Court is persuaded that the defendants are correct in asserting that a factual dispute does remain with respect to

the relationship of the other equipment to the two original nailing machines. A good deal of confusion is reflected in the record as to exactly how, if at all, the pieces of other equipment were associated with or connected to the two nailing machines, and the defendants are entitled to a trial to establish, if they can, that the other equipment did not constitute repairs, replacements of parts, or accessions to the nailing machines within the terms of the description of covered collateral contained in the security agreement executed between Bulk and Doede. The description contained in the security agreement is adequate if the other equipment can be said to constitute repairs, replacements of parts, or accessions to the two nailing machines. It was not necessary for the security agreement description to list the other equipment by name, model number, or other specific designation so long as the other equipment was reasonably described by the security agreement.

Arthur Doede has averred by affidavit that after the nailing machines had been repaired and refurbished by Atlantic, various pieces of equipment were physically attached to the machines and that the controls on the nailing machines and the additional equipment had been intermingled so that the nailing machines would suffer damage in the process of separating the nailing machines and the additional equipment. This affidavit has not been countered by the plaintiff through a showing that the specific pieces of other equipment for which the plaintiff is claiming judgment were not repairs or replacements of parts of the nailing machines, or that the pieces of other equipment were not so attached to or synchronized with or difficult of removal from the nailing machines as to reveal the pieces of other equipment to be something other than accessions. Therefore, I find that an issue of material fact does remain with respect to whether or not the pieces of other equipment were repairs, replacements of parts, or accessions to the two nailing machines.

■ With regard to the financing statement filed by Doede, I am of the opinion

that the description therein adequately described the covered collateral. While the financing statement did not refer to repairs, replacement parts, or accessions, as did the security agreement, the statement did refer to "pallet mill operation and manufacturing equipment." Such a description appears to fall within the Uniform Commercial Code concept of "notice filing." See Official UCC Comment to Article 9–402, Wis.Stat. § 409.402. The items of other equipment as to which the plaintiff is requesting judgment were sufficiently covered by the financing statement description as to put the plaintiff on notice that further inquiry would be necessary to ascertain the existence or non-existence of prior encumbrances on the other equipment. Thus, the plaintiff's arguments that the descriptions of covered collateral were inadequate fail.

■ As the second basis for its motion for summary judgment, the plaintiff asserts that the defendants had no perfected security interest because Bulk, their debtor, never acquired any rights in the pieces of other equipment and therefore the Doedes' security interest never attached. A debtor must have rights in collateral before a security agreement can attach. Wis.Stat. § 409.204. The argument by NACA is that a debtor must have possession of the collateral before he can be said to have such rights in the collateral as to allow a security interest to attach, and Bulk never acquired possession of the items of other equipment attached to the original nailing machines.

The record does show that the Doedes' debtor, Bulk, never did have actual physical possession in Wisconsin of the items of other equipment as to which the plaintiff is seeking judgment in this motion. Moreover, the defendants have not directly responded to the plaintiff's argument that their debtor never acquired rights in the other equipment so that their security agreement could attach. Nevertheless, I am of the opinion that a genuine dispute of material fact does remain with regard to the issue of whether or not the Doedes' debtor ever acquired rights in the collateral. Therefore, the plaintiff's motion for partial summary judgment must also be denied as to this second issue.

In actuality the record does not show the facts of this case with such clarity as to justify the Court in concluding that no issue of material fact remains. Neither party has informed the Court of how the nailing machines which originally belonged to Bulk came to be sold by Atlantic to West, which may reflect upon the issue of who acquired rights in the items of other equipment. Apparently, Atlantic was acting at the direction of the president of Bulk in working on the nailing machines and in adding the repairs, alterations, or accessions to the machines. Neither party has addressed the question of whether or not the action of adding the items of other equipment to the nailing machines as repairs, alterations, or accessions was sufficient to bestow rights in the other equipment upon the Doedes' debtor. White and Summers, *Uniform Commercial Code,* § 23–4 at 795, indicates that something less than actual physical possession can suffice to give a debtor rights: "What kinds of 'rights in the collateral' may the debtor acquire that will suffice under 9–204(1)? Obviously full ownership will suffice. But courts have so far intimated that less will do." Thus the issue of whether or not the Doedes' debtor acquired rights in the items of other equipment must await further development. Moreover, the record indicates that after completing work on the nailing machines, Atlantic released the machines along with the items of other equipment to an agent of the president of Bulk for shipment back to Wisconsin. (Deposition of Alexander Campbell, Sr., at 31.) The plaintiff has not shown how possession of the items of other equipment by an agent of the Doedes' debtor was insufficient to bestow rights in the collateral upon the debtor. Therefore, I conclude that on the basis of this record, the plaintiff's motion for partial summary judgment must be denied.

*Plaintiff's Motion for Costs and Attorney Fees*

Pursuant to F.R.C.P. 30(g)(2) the plaintiff has moved for costs and attorney's fees incurred by the plaintiff when a deponent failed to appear due to the defendants' failure to subpoena him. By affidavit the attorney for the plaintiff has averred that after receiving notice of the deposition from the defendants' attorneys he flew to Florida to attend the deposition, which caused him to incur costs of $231.00 for plane and taxi fare and which occupied seven hours of his time, for which he requests a fee of $525.00. Rule 30(g)(2) allows the Court to award a party recovery of reasonable expenses incurred in attending a deposition that was not held because the deponent was not subpoenaed. Because these expenses by the plaintiff's attorney appear to have been reasonably incurred in attending such a deposition, and because the defendants have not responded to the plaintiff's motion, the Court grants the plaintiff recovery for its expenses in the amount of $756.00.

THEREFORE, IT IS ORDERED that the motion of the plaintiff NACA for partial summary judgment is denied; and

IT IS FURTHER ORDERED that the motion of the plaintiff NACA for costs and attorney's fees is granted and that the defendants pay to the plaintiff the amount of $756.00.