In re INTERNATIONAL HORIZONS, INC., Debtor.

In re INTERNATIONAL HORIZONS (Curacao), N.V., Debtor.

In re NORTH AMERICAN EXPORTS, INC., Debtor.

In re INTERNATIONAL HORIZONS, N.V., Debtor.

Bankruptcy Nos. 81–01231A, 81–01232A, 81–01233A and 81–01234A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

May 27, 1981.

David G. Bisbee, Bisbee & Parker, Robert A. Parker, Jr., Atlanta, Ga., Dale M. Schwartz, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for debtors.

Jeffrey L. Raney, Robert W. Patrick, Jr., Jesse H. Austin, Karen Wildau, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Bank of America.

Dennis S. Meir, Kilpatrick & Cody, Atlanta, Ga., for Creditors' Committee.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

On May 11, 1981, the debtors filed an application for authority to use cash collateral in the approximate amount of $470,-000.00 in order to purchase yearbooks. On

the same day, the debtors filed an application for authority to transfer certain funds presently held in Japan to the United States. On May 15, 1981, the debtors filed an application for authority to use cash collateral· in order to purchase additional Product and to pay administrative expense claims for interim compensation to professional persons which the Court might allow.

On May 21, 1981, the Court entered an Order granting an interim allowance of attorneys' fees to Troutman, Sanders, Lockerman & Ashmore in the amount of $30,-000.00 and costs in the amount of $3,343.86. The Court also made an interim allowance of compensation to Bisbee & Parker in the amount of $34,000.00 and costs in the amount of $6,262.95.

On May 18, 1981, a hearing was held with respect to the debtors' applications and the matter was taken under advisement.

### Applications to Use Cash Collateral

▇ The Bank of America (hereinafter "BOA") objects on several grounds to the applications for authority to use cash collateral. The first point BOA raises is that the debtors are not entitled to use the alleged cash collateral because they have no beneficial interest in these funds. BOA alleges that it has a perfected security interest in these funds and that a constructive trust in favor of BOA was created by the debtors' alleged wrongful diversion of funds in which BOA claims a security interest. In support of this argument, BOA cites several cases. *In re Bruce Farley Corp.*, 612 F.2d 1197 (9th Cir. 1980); *Teledyne Industries, Inc. v. Eon Corporation*, 401 F.Supp. 729 (S.D.N.Y.1975); *Limperis v. Material Service Corp.*, 415 F.Supp. 65 (N.D.Ill.1976). However, the facts of those cases vary from the circumstances involved here. While in this case it may later be determined that a constructive trust should be imposed upon these funds because the debtors wrongfully retained them, it is also possible that BOA has no rights in these funds; and should this be the case, the retention by the debtors was not wrongful. That issue will be determined by an adversary proceeding

which is now pending in this Court. In the meantime, in order to protect the positions of both parties, the funds will be treated as cash collateral., The debtors will be allowed to use the funds so long as the position of BOA with respect to the funds is adequately protected.

BOA also argues that the debtors lack good faith. The Court finds no evidence in the record to sustain BOA's contention on this point. BOA alleges that the intent of the debtors is to divert funds in which the debtors have no interest to the debtors. However, it is clear that International Horizons, N.V. has some type of interest in these funds. It is further clear that all of the debtors act together to operate, primarily, one business, *i. e.* the sale and distribution of English language services to consumers in Japan. The fact that the debtors continue to attempt to operate this business does not indicate a lack of good faith.

BOA also cites three cases for the proposition that "assets of one debtor may not be used to fund operations and expenses of related debtors and entities." BOA's Brief, pp. 9 and 10. *In re Gulfco Investment Corp.*, No. 74–1393 and consolidated cases (10th Cir., filed Dec. 19, 1979); *In re Pittsburgh-Duquesne Dev. Co.*, 482 F.2d 243 (3rd Cir. 1973); *John Hancock Mutual Ins. Co. v. Casey*, 139 F.2d 207 (1st Cir. 1943). However, these three cases deal with situations in which administrative expenses are sought to be paid from the collateral without provision for adequate protection. See 11 U.S.C. § 506(c). In such circumstances, it would clearly be inequitable to require the secured creditor of one debtor to have his collateral subjected to the payment of administrative expenses for the operation of related debtors. However, in the cases at hand, there will be "judicial direction that include[s] some provision for substituted security." 482 F.2d at 245. Therefore, the facts of these cases do not fall within the rationale of the argument of BOA.

BOA has also stated that "there is no evidence that the demise of any of these Debtors would necessarily affect the collection process in Japan." BOA's Brief, p. 4.

However, the Court does not find this to be the case. As one BOA officer, Jack W. Schultz, testified, the effect of the termination of the debtors' business operations "would have a detrimental effect on the collateral and our ability to collect out the collateral would be somewhat, I guess, disastrous, inhibited." Rule 205 Examination of Jack W. Schultz at p. 110. Therefore, the Court remains of the opinion that BOA is the party primarily protected by the use of cash collateral to continue the debtors' business operations.

BOA also argues that the debtors have not shown any immediate need for the funds which they request. The committee of unsecured creditors agrees with BOA that "it would be premature for the Court to authorize the use of cash collateral for the final one-third payment [in the amount of $156,667.00 for the purchase of 94,000 yearbooks] pending the outcome of business operations in the ensuing ten-week period, since successful operations may make use of these funds unnecessary." Creditors' Committee Brief, p. 6. However, the Creditors' Committee agrees with the debtors that the remainder of these funds are necessary for current operations.

The immediate need for authority to use $241,031.00 in order to purchase and ship to Japan 2,520 sets of Product has been established to the satisfaction of the Court. There is also immediate need for funds in the amount of $73,606.81 in order to pay the administrative claims of the attorneys for the debtors in possession, which claims were allowed by this Court in its Order of May 21, 1981. The Court also finds that it is appropriate to allow the debtors authority to use cash collateral in the amount of $8,500.00 for the purchase and shipment by sea to Japan of 1,000 volumes of Dictionaries of Basic Words.

■ The final sum which the debtors request authorization to use is $470,000.00 for purchase and shipment by sea to Japan of 94,000 volumes of yearbooks. The Court is inclined to agree at this time with BOA and the unsecured Creditors' Committee that no immediate need has been shown for funds

to make the final one-third payment on these yearbooks because that payment will not be due for ten weeks. However, the Court does find that the debtors should be authorized to utilize funds in order to make the first two payments on these yearbooks. Therefore, the debtors in possession are also given permission to use funds in the amount of $313,334.00 for the purpose of making these two payments.

■ BOA also objects to a change in the internal accounting procedures establishing the priority of the applications of payments to the various products sold by the debtors. Effective March 1, 1980, the funds that are collected are applied to the various accounts in the following order: Yearbook, A.L.E. Enrollment Fees, and Product. This is the priority of application of funds that the debtors also used prior to March 1979. Since the debtors have offered to grant to BOA as substitute collateral a security interest in the accounts receivable generated by the sale of the yearbooks, the Court does not find that this change in priorities will detrimentally affect BOA. Therefore, this objection is also overruled.

■ The final objection of BOA is based upon a scheduled increase in the price of the yearbooks to the Japanese consumers from 3,500 yen to 6,500 yen. It appears to the Court that any loss of sales incurred as a result of the price increase will be more than offset by the additional profits which accrue from the expanded profit margin on each book sold. Moreover, the Court is inclined to view the decision of whether or not to raise prices as a business decision concerning only the debtors. Therefore, this objection is also overruled.

### Transfer of Funds

The debtors' application to transfer funds requests the transfer of all funds in Japan which represent proceeds from receivables in which BOA asserts a claim to the United States. BOA objects to the transfer of funds on the grounds of constructive trust and lack of good faith. These arguments have been raised and addressed in an earlier portion of this Order.

BOA also requests that if the transfers are allowed that they should be limited as follows:

"1. Minimized in order to provide a cushion for maintaining the Japanese operations and to reduce potential foreign exchange losses which would otherwise be incurred if it is later determined that such funds properly belong in Japan; and

2. Accompanied by remittance licenses provided by the debtors which have been generated by the Product shipments since the commencement of these cases." BOA's Brief, p. 15.

The Court agrees with BOA on both these limitations. Therefore,

IT IS HEREBY ORDERED AND ADJUDGED that the debtors shall be and are authorized to use cash collateral in the amount of $241,031.00 in order to purchase and ship to Japan 2,520 sets of Product.

IT IS FURTHER ORDERED AND ADJUDGED that the debtors shall be and are authorized to use cash collateral in the amount of $73,606.81 in order to pay the administrative expense claims of the attorneys for the debtors previously allowed by Order of this Court.

IT IS FURTHER ORDERED AND ADJUDGED that the debtors shall and do have authority to use cash collateral in the amount of $8,500.00 for the purchase and shipment by sea to Japan of 1,000 volumes of Dictionaries of Basic Words.

IT IS FURTHER ORDERED AND ADJUDGED that the debtors shall be authorized to use cash collateral in the amount of $313,334.00 for the purpose of making the first two payments towards the purchase and shipment by sea to Japan of 94,000 volumes of yearbooks.

IT IS FURTHER ORDERED AND ADJUDGED that the debtors shall grant to the Bank of America a first security interest in the aforementioned Product, Dictionaries, and Yearbooks as substitute collateral for the cash collateral which the debtors are hereby authorized to use.

IT IS FURTHER ORDERED AND ADJUDGED that upon distribution of the aforementioned Product, Dictionaries, and Yearbooks in Japan that BOA shall be granted a security interest in the promissory notes generated by the sale of the aforementioned Product, Dictionaries, and Yearbooks as substitute collateral for the cash collateral which the debtors are hereby authorized to use.

IT IS FURTHER ORDERED AND ADJUDGED that the debtors in possession shall first use the cash collateral held in the Registry of the Court and shall thereafter transfer cash collateral held in Japan by affiliates of the debtors and shall thereafter transfer, if necessary, the "sequestered funds" up to the remaining balance of cash collateral which the debtors are hereby authorized to use.

IT IS FURTHER ORDERED AND ADJUDGED that the debtors shall supply remittance licenses for the transfer of funds from Japan.

IT IS SO ORDERED.