Marlyn Verle DAHLQUIST, Robert Dean Dahlquist, and Robert ·Dean Dahlquist, Plaintiff,

v.

FIRST NATIONAL BANK IN SIOUX CITY, IOWA, Defendant and Appellant,

and

F. Joseph DuBray, Appellant.

Civ. Nos. 83–4173, 83–4174, 83–4175, 83–4182, 83–4183 and 83–4184.

United States District Court, D. South Dakota, S.D.

Oct. 14, 1983.

John E. Harmelink, John R. Kabeiseman, Yankton, S.D., for plaintiff.

F. Joseph DuBray, George F. Madsen, Sioux City, Iowa, Edward J. Leahy, Sioux Falls, S.D., for defendant.

## MEMORANDUM OPINION

JOHN B. JONES, District Judge.

This appeal came on for hearing on September 26, 1983, and I contemplated being able to make oral decision herein on October 3, 1983. The continuation of the hearing had to be cancelled because of other trial commitments, and the issues will therefore be decided in this memorandum opinion.

Debtors Marlyn, Robert and James Dahlquist (hereinafter referred to as debtors or by their first names) owed the First National Bank in Sioux City, Iowa (hereinafter referred to as the bank) money and the debt was secured.

Debtors filed for Chapter 11 bankruptcy relief on July 5, 1983. At that time, there was pending in the United States District Court in Nebraska litigation between the bank and the debtors over apparent disappearance of substantial amounts of the collateral.

The Bankruptcy Court held an expedited hearing on July 15, 1983 in which the debtors sought the right to use cash collateral for personal and farming expenses, and the bank sought to have the bankruptcy stay lifted so they could continue with the Nebraska litigation. Hearing on some of the issues was continued to July 25, 1983, but at the conclusion of the hearing, the Bankruptcy Court orally approved the use of $60,000 in cash collateral for personal and farming use, upon the condition that Marlyn's wife, Mary, who was not involved in the bankruptcy action, give the bank a second mortgage on real estate owned by her as additional or substitute security.

This decision was appealed on July 22, 1983, and the Bankruptcy Court entered its formal order on July 25, 1983, from which an appeal was taken on July 26, 1983.

On July 21, 1983, Marlyn sold hogs for $5,236.00 and had the check made payable to him and the bank. There was an extended hearing before the Bankruptcy Court on July 25, 1983 but neither party brought up the matter of this check. Following the hearing, there was some exchange and disagreement between the counsel over whether the bank could endorse this check, and counsel for the debtors contacted the Bankruptcy Court and related the dispute. The parties disagree whether counsel for the bank were told that the Bankruptcy Court wanted to reconvene the hearing to consider the impasse which had developed over handling of the check.

At the hearing on July 28, 1983, the Bankruptcy Court held the bank and its attorney, F. Joseph DuBray in contempt of court, fined them and assessed costs against them. The bank and DuBray appealed these decisions.

The parties disagree on the standard of review, with the debtors contending for the "clearly erroneous" standard under Rule 8013, and with the bank contending for a *de novo* standard under the Jurisdictional Order of 12–22–82.

■ I conclude that the *de novo* standard referred to in the jurisdictional order relates only to those issues referred to in *Marathon* as beyond the jurisdiction of bankruptcy courts. The clearly erroneous standard still applies to those decisions inherent in the exercise of bankruptcy jurisdiction. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 92, 102 S.Ct. 2858, 2882, 73 L.Ed.2d 598, 628 (Burger, C.J., dissenting). All issues in this appeal are governed by the clearly erroneous standard.

### 1. USE OF CASH COLLATERAL

■ The use of cash collateral is provided for in 11 U.S.C.A. § 363 (1979). The issue of the use of cash collateral involves the balancing of irreconcilable and conflicting interests in Chapter 11 proceedings, as stated in *Stein v. United States Farmers Home Admin.* (In re *Stein*), 19 B.R. 458 (Bankr.E.D.Penn.1982).

■ Where cattle are being fed and crops are being irrigated and cared for, and both are subject to security interests, it is in the interests of all parties to continue doing so until the cattle are marketable and the crops harvested, and the use of cash collateral for such purposes is clearly necessary. *Id.* at 460; *see SunBank/Suncoast v. Earth Life, Inc.* (In re *Earth Lite, Inc.*), 9 B.R. 440, 443 (Bankr.D.Fla.1981) (use of cash collateral vital to Chapter 11 debtor).

Where the labor therefor is being furnished by the debtors, some reasonable allowance for living expenses is also proper. *See generally* In re *Gaslight Village, Inc.*, 6 B.R. 871, 875 (Bankr.D.Conn.1980). The bank cites *Georgia Pacific Corporation v. Signma Service Corporation*, 712 F.2d 962 (5th Cir.1983), footnote 1, for the proposition that debtors are not entitled to any allowance for living expenses. I believe that the term "compensation" as used therein refers to compensation for performing services as a trustee, and has no application to this case.

It is my opinion that the proper issue to be litigated on this subject is the cash amount reasonably required, and this issue was obscured by the conduct of the parties.

■ A second issue is whether bank's security is impaired. When cattle are fed and crops cared for, the value of the bank's security therein is enhanced. *Stein*, 19 B.R. at 460. The Bankruptcy Court also required Mary Dahlquist to furnish additional collateral. Although the bank disputes the value of this additional security based on its claims in the Nebraska litigation that it has equitable claims against this property, I am unwilling to hold that the Bankruptcy Court's action was clearly erroneous. In re *International Horizons, Inc.*, 11 B.R. 366, 367 (Bankr.N.D.Georgia 1981). That part of the order relating to the use of cash collateral will be affirmed.

## 2. CONTEMPT OF COURT

■ The Bankruptcy Court found F. Joseph DuBray and the bank in contempt of court orally in the July 28, 1983 hearing and the oral decision was incorporated into a written order dated August 3, 1983.

The bank was found in contempt of court for refusing to provide banking services to the debtors and for bad faith dealings in open court, and was assessed attorneys fees of $1,200.00 and costs of $35.00 plus transcript costs as punishment therefor.

F. Joseph DuBray was found in contempt of court for refusing to provide banking services and for bad faith dealing with the court, and fined $250.00.

The Bankruptcy Court's finding of contempt of court is not supported by the record herein and is therefore reversed as to each party.

An examination of the record clearly discloses that the actual basis for these contempt findings is the perceived refusal of Mr. DuBray to return to Bankruptcy Court on July 25, 1983 and the refusal of the bank to endorse the July 21, 1983 check. The record does not support a finding that either Mr. DuBray or the bank refused to provide banking services to the debtors, or that either Mr. DuBray or the bank was guilty of bad faith dealing with the Bankruptcy Court.

Mr. DuBray's failure to return to Bankruptcy Court on July 25, 1983 and the refusal of the bank to endorse the check in question would not constitute sufficient factual bases for a finding of contempt, and the use of the general findings of "bad faith dealing" do not elevate this conduct to the required level. *Jameson v. Jameson*, 306 N.W.2d 240, 241 (S.D.1981) (four elements necessary to sustain a finding of contempt).

The oral findings of contempt against F. Joseph DuBray and the bank, and paragraphs 3, 4, 5 and 6 of the Bankruptcy Court's Order of August 3, 1983 are hereby reversed and set aside.

## 3. CONCLUSION

The Bankruptcy Court's order for the use of cash collateral of July 25, 1983 and as modified on August 3, 1983 is affirmed.

The Bankruptcy Court's finding and order on contempt against DuBray and the bank is