**In re John I. QUAAL, individually and d/b/a John Quaal & Sons, and Connie M. Quaal, Debtors.**

**Bankruptcy No. 3-83-00327.**

United States Bankruptcy Court, D. Minnesota, Sixth Division.

April 12, 1984.

Roger Minch, Fargo, N.D., William Kampf, St. Paul, Minn., for debtors.

Jeff Bagniefski, Fergus Falls, Minn., for First Nat. Bank of Fergus Falls.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter came before the Court upon a motion for use of cash collateral filed by the Debtors. By their motion, the Debtors, who are dairy farmers, seek permission to dispose of the cash proceeds as derived from the sale of milk. This request was objected to by the First National Bank of Fergus Falls (Bank) who appeared at a hearing held on March 22, 1984. It is the Bank's position that the Debtors are entitled to the use of the proceeds only to the extent that the Bank does not have a proper security interest in such proceeds. The issue presented is whether the Bank has a valid security interest in milk produced subsequent to the Debtors' filing for relief on February 22, 1984.

The Debtors on July 29, 1983, entered into a security agreement with the Bank whereby the Bank was given a security interest in:

> All poultry and livestock and their young, products thereof and produce thereof, whether now owned or hereafter acquired, ...

Perfection was accomplished by the filing of a standard form financing statement which made reference to all farm livestock, but the box indicating products of collateral was not checked.

The Debtors also extended to the Bank two assignments of their milk sale proceeds. The first, dated July 29, 1981, granted the Bank 25% of the total due each month from the dairy. The second assignment, dated May 3, 1982, extended the Bank an additional $1,000.00 per month from such payments.

At the outset, it must be conceded that the term "product" as set forth in the security agreement would, under M.S.A. § 336.9–109(3) include milk from the Debtors' cows so long as the milk remains in the Debtors' possession.

The Bank places primary reliance upon section 552(b) of the Bankruptcy Code which, it argues, does not mandate the filing of a financing statement in order to maintain a security interest in products of previously secured collateral. Section 552(b) is subject, however, to the avoiding powers accorded a trustee by section 544. An interest claimed upon the authority of section 552(b) cannot prevail if such interest would be subject to this avoidance power. Under section 544(a), a trustee at the time of the bankruptcy filing becomes vested with the status of a hypothetical lien creditor, a status which is accorded to a debtor-in-possession by section 1107(a) of the Code. It must also be noted that the debtor/trustee is also armed with the provisions of the Uniform Commercial Code itself where, in M.S.A. § 336.9–301(3), a lien creditor is defined as "a trustee in bankruptcy from the date of filing of the petition". Subsection (1)(b) of the foregoing provision mandates that an unperfected security interest is subordinate to the rights of a lien creditor. The Bank's interest in

the proceeds was unperfected as of February 22, 1984, and thus by virtue of the Bankruptcy Code and the Uniform Commercial Code, its interests in the milk proceeds is inferior to the rights of the Debtors. This Court has recently had occasion to consider the applicability of section 552 to milk proceeds irrespective of any section 544 considerations. Bankruptcy Judge John J. Connelly, in the February 1984 case of *In re Lawrence*, Bankruptcy No. 3–83–190, construed section 552(b) very narrowly and concluded that this section was never intended to apply to milk produced post-petition or the proceeds of post-petition milk production, irrespective of whether the creditor's interest in such proceeds had been perfected.

■ Even if the Bank had a properly perfected security interest in the proceeds, it is worth noting that it is the business of dairymen to market their milk on a very regular basis, a situation which is the rule in a dairy operation and which is obviously well-known to anyone involved in dairy lending. In this connection, this Court has previously looked to the provisions of U.C.C. § 9–306(2) (M.S.A. § 336.9–306(2)) which provides that a security interest may be lost if the disposition of collateral is authorized by the secured party. Authorization may be implied from a party's conduct, from a course of dealing or from usages of trade. The very nature of the dairy business makes it clear that at the time a security interest is entered into, a sale of farm products under the guise of milk is contemplated by both parties. Thus, when a creditor permits a debtor to sell collateral from time to time as he chooses and relies upon the debtor for payment, declining to require the debtor to obtain written authority, the creditor may be viewed as acquiesing and consenting to the sale and thereby losing its secured status in the process. *United States v. Central Livestock Association, Inc.*, 349 F.Supp. 1033 (D.N.D.1972); *In re Eugene Thomas*, 38 B.R. 50 (Bankr.D.N.D. 1983). It may be implied from the circumstances surrounding a dairy farmer's periodic marketing of milk that such sale was authorized by the lender and as such operates to defeat the lender's security interest in the proceeds derived from the sale.

■ The fact of a milk account assignment does not resurrect to the Bank to a secured position with respect to post-petition proceeds of milk sales. In a heretofore unpublished opinion by Bankruptcy Judge Robert J. Kressel of this District, it was held that section 552(a) of the Code operates to nullify and cancel all milk account assignments as of the date of petition filing. *See In re Trevis*, Adversary No. 82–0595, decided March 8, 1984. This position was further amplified in the case of *In re Paquette*, Adversary No. 83–0395, decided in this District on March 8, 1984, where the Bankruptcy Court by Bankruptcy Judge John J. Connelly held:

> It is clear, however, that under 11 U.S.C. § 552(a) any post-petition milk produced and proceeds from its sale are not subject to any security interest and are not cash collateral. Section 552(a) provides: (a) except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. This section serves to nullify the effect of a pre-petition security interest in post-petition property.

Accordingly, it is the holding of the Court that neither the First National Bank of Fergus Falls, any assignee, or any other party in interest has a particular claim to milk (or the proceeds from the sale of the milk) produced after February 22, 1984. It is hereby ordered that Mid-America Dairymen is hereby authorized and directed to make all milk checks payable to the Debtors only and to deliver all such milk checks directly to the Debtors free and clear of any and all security interests or assignments or any other claims until further order of this Court or until the Debtors' bankruptcy case is dismissed.