**In re Roland T. SERBUS, Debtor.**

**Bankruptcy No. 4–84–1472.**

United States Bankruptcy Court, D. Minnesota.

Nov. 19, 1984.

Michael A. Fahey, of Nicklaus, Monroe & Fahey, Chaska, Minn., for debtor.

Richard F. Nitz, of Williams, Nitz, Krekelberg, Stringer & Oldenkamp, Fergus Falls, Minn., appeared for First Nat. Bank of Fergus Falls.

Ed Pollard, pro se, for Pollard's Mills & Elevator Co. and Clarence Lennes.

MARGARET A. MAHONEY, Bankruptcy Judge.

The above-entitled matter came on for hearing on October 31, 1984, on the motion of the Debtor for termination of milk check assignments payable to certain creditors and for use of cash collateral pursuant to 11 U.S.C. § 363.

For the reasons outlined below, I am terminating certain of the milk check assignments and allowing limited use of cash collateral.

### FACTS

1. Debtor is a farmer who filed a Chapter 11 voluntary petition in bankruptcy on August 24, 1984.

2. Along with other secured creditors, the Debtor owes monies to the First National Bank of Fergus Falls. At the time of the filing of his bankruptcy petition, Debtor owed the Bank $22,230.19. The debt to the First National Bank of Fergus Falls is secured by a security interest in all of Debtor's livestock and his crops grown on the home farm and all farm machinery and equipment. First National Bank of

Fergus Falls has an alleged security interest in Debtor's milk. (Debtor's Exh. 7.)

3. Debtor owes, pursuant to a security agreement signed by the Debtor, the sum of $65,000 to Pollard's Mills and Elevator Company and Clarence Lennes. As security for said debt, Pollard's Mills and Elevator Company and Clarence Lennes filed a financing statement which alleges security in all farm products, accounts or general intangibles arising from or relating to the sale of farm products and crops growing on the land of Clarence Lennes. Debtor has raised the issue as to whether the lien given to Pollard's Mill and Elevator Company and Clarence Lennes is preferential under 11 U.S.C. § 548 due to the date of the signing of the security agreement and the filing of the financing statement.

4. Debtor desires to use or sell the crops grown on his home farm and the farm of Clarence Lennes in 1984 and desires to use the monies presently being paid to various creditors under his milk assignment with Land O'Lakes. Debtor also wishes to be able to cull cows and sell cows and purchase new cows for his dairy herd.

5. Debtor offered First National Bank of Fergus Falls, as and for adequate protection, a replacement lien in any new cows purchased by Debtor and in Debtor's new crops to be grown in 1985. Debtor offered Pollard's Mill and Elevator Company and Clarence Lennes, as and for adequate protection, a replacement lien in the 1985 crop to be grown on the farm of Clarence Lennes.

6. The value of the dairy cows presently in the possession of Debtor is $24,000. Since the filing of the bankruptcy petition, three dairy cows have died and two have been sold. The two dairy cows which were sold were sold for $529.00 in total. Debtor had 60 acres of corn planted on his home farm in 1984. Debtor testified that he yielded 72 to 75 bushels per acre of corn on his home farm and on the Clarence Lennes farm, and that corn was now selling for as much as $2.71 per bushel and as little as $2.43 per bushel. Accordingly, 72 bushels

of corn per acre × 60 acres × $2.43 per bushel yield total corn on Debtor's farm of $10,497.60.

7. Debtor has a yield of approximately 25,000 bushels from the Clarence Lennes farm. At $2.43 per bushel, this yields $60,750.00. At $2.71 per bushel, this yields $67,750.00.

8. There was no evidence as to the value of Debtor's farming equipment or equity therein offered.

9. There was no appearance by certain of the persons to whom milk assignments had been granted in the past: Community State Bank of Alexandria, Massey-Ferguson, Gerald D. Adamson or Ronald and Lois Larson. Only the First National Bank of Fergus Falls requested protection of its milk check assignment.

## CONCLUSIONS OF LAW

1. Due to their failure to object, the milk check assignments of Community State Bank of Alexandria in the amount of $234.01 and $177.30, the milk check assignments of Massey-Ferguson in the amount of $984.95, and the milk check assignment of Gerald D. Adamson in the amount of $900.00 are terminated.

2. The First National Bank of Fergus Falls has no security interest in Debtor's milk produced post petition and therefore its milk check assignment is terminated.

3. If Debtor sells any dairy cows or sells any crops, the proceeds of said sales constitute "cash collateral" under 11 U.S.C. § 363.

4. Debtor has adequately protected First National Bank of Fergus Falls as to its lien in Debtor's livestock by granting them a replacement lien in new dairy cows and by paying over to it the proceeds of sale of the two cows previously sold of $529 if none of Debtor's grain is used from the home farm.

5. Debtor's offer of adequate protection to Pollard's Mills and Elevator Company and Clarence Lennes, until determination

of the validity, priority and extent of their lien, is inadequate.

## DISCUSSION

The Debtor's motion for use of cash collateral is brought under 11 U.S.C. § 363 and its motion to terminate milk check assignments is brought under 11 U.S.C. § 544.

### Milk Check Assignments Termination

■ Debtor requests termination of the milk check assignments of Community State Bank of Alexandria, in the amount of $234.10 and $177.30, Massey-Ferguson in the amount of $984.95, Gerald D. Adamson in the amount of $900.00 and First National Bank of Fergus Falls in the amount of $2,500.00 per month. Since there was no appearance by any of the assignees except the First National Bank of Fergus Falls, it is only necessary for the Court to determine the appropriateness of terminating the milk check assignment of the First National Bank of Fergus Falls. All other assignments will be terminated as requested.

■ The First National Bank of Fergus Falls presently receives a milk check assignment of $2,500.00 per month. This assignment was made pursuant to an agreement between the First National Bank of Fergus Falls and the Debtor. Debtor claims that the milk check assignment agreement was not properly perfected and therefore is not a valid lien prior to the interest of the Debtor at this time. Debtor also had signed a security agreement dated June 24, 1983, giving the Bank a security interest in his livestock and "products thereof and produce thereof, whether now owned or hereafter acquired."

A review of Minnesota Bankruptcy Court case law shows that it is not necessary to reach the issue, for purposes of terminating the milk check assignment, of whether the Bank's lien is perfected or not. Under 11 U.S.C. § 552, a secured party's interest

in the milk produced by Debtor's dairy herd after the filing of the bankruptcy petition is terminated at filing. *In re Lawrence*, 41 B.R. 36 unreported decision dated February 25, 1984, affirmed by the Minnesota District Court on May 17, 1984, MN Dist.Ct. File No. CV–3–84–377 (copies attached). The Bankruptcy Court in the *Lawrence* decision stated:

> "There is no question in this Court's mind that milk produced post-petition or the proceeds of post-petition milk production are not subject to the Section 552(b) exception ... Milk and proceeds existing pre-petition as well as post-petition proceeds resulting from milk produced pre-petition are subject to the Bank's security interest pursuant to Sections 552(b) and 363(c). However, milk produced post-petition is an asset coming into existence totally after the filing and not intended to be covered by the 552(b) exception."

I find also that based on the "equities in the case" pursuant to 11 U.S.C. § 552(b), a termination of the Bank's security interest is also warranted. As in the *Lawrence* case, *supra*, the Bank is oversecured and adequately protected. Therefore, the milk check assignment should be terminated.

## CASH COLLATERAL

■ 11 U.S.C. § 363(c)(2) provides that the debtor-in-possession [1] may use or sell cash collateral only if creditor consents or the Court authorizes the use. Under 11 U.S.C. § 363(e), the Court may only authorize use of cash collateral upon a showing by the Debtor of adequate protection of the creditor's interests. In this case, Debtor requests use of the following collateral:

(1) all crops growing on Debtor's home farm and the Lennes farm (1984 season);

(2) all milk check proceeds;

(3) all dairy herd sale proceeds.

11 U.S.C. § 363(a) defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts,

---

1. 11 U.S.C. § 363(c)(2) actually reads "the trustee", however, debtor-in-possession has all the duties and powers of the trustee under 11 U.S.C. § 1107.

or other cash equivalents." Until sold, the dairy cows and 1984 crop of Debtor do not represent cash collateral. However, I will assume that Debtor plans to sell all or part of the crops and/or dairy cows generating cash which would be cash collateral. In fact, Debtor states in his motion papers and in his testimony that he would be selling some of the 1984 crops and selling some dairy cows in order to cull his herd.

1. *Interests of First National Bank of Fergus Falls.* The First National Bank of Fergus Falls does have an interest in Debtor's dairy herd and the crops of Debtor growing on its home farm. The Bank also has an interest in the $529 in cash held by the Debtor which represents proceeds of sale of two dairy cows. In order to allow use of the present cash from dairy cow sales and allow sale of other cows in Debtor's dairy herd, Debtor offers the Bank a replacement lien in the new cows he would be purchasing. Debtor wishes to use the Bank's cash collateral to cull his dairy herd and continue to buy new stock. According to the values established at trial, Debtor's cows are presently worth $24,000, and the Bank's debt is $22,230.19. Interest continues to accrue on this debt. There was testimony that the value of the cows was diminishing very minimally at present. The Bank also has a lien in the 1984 crops on Debtor's home farm worth approximately $10,500. Therefore, if Debtor holds the present assets it has (or replaces them), the Bank has an equity cushion and is adequately protected by the Debtor. This is only true however as long as Debtor holds the crop from his home farm and does not sell or use it. Without the crop value, the Bank is not adequately protected by the value of the livestock alone.

Debtor wishes to cull his dairy herd and to use sale proceeds from culled cows to purchase replacement cows. Debtor offers a replacement lien in the new livestock to the Bank. I find this to be adequate protection for the Bank. Debtor also requests the ability to use and sell the 1984 crop grown on the home farm. Debtor offers a replacement lien in the 1985 crop to be grown on the home farm as adequate protection. I do not find that a replacement lien in a future crop is adequate protection standing alone. *In re Schaller*, 27 B.R. 959 (D.C.Wis.1983). Therefore, use of the 1984 crop from the home farm or its sales proceeds is not allowed. Use of the crop would completely wipe out any equity cushion for the Bank and the crop is therefore necessary for adequate protection.

2. *Interest of Pollard's Mills and Elevator Company and Clarence Lennes.* The Debtor requests use of the 1984 crop and/or the sales proceeds of the same from the rented land of Clarence Lennes. Pollard Mills and Elevator Company and Clarence Lennes claim to have a secured position in regard to the crop on the Lennes farm. As and for adequate protection to the Pollard Mills and Clarence Lennes, the Debtor proposes a replacement lien in the 1985 crops to be grown on the Lennes farm. Debtor did not establish any equity cushion in the present crop being grown on the Lennes farm and this is Debtor's burden to prove. The validity and priority of the Pollard Mills and Lennes lien is not yet determined and is the subject of an adversary proceeding commenced in this Court. Since the validity of the lien is still in question, I must assume that the interest of the creditors must be protected. As stated above, a lien in future crops is not in and of itself adequate protection. *In re Schaller, supra.* Such a lien is too speculative to constitute a sound replacement security. Therefore, I must deny use of the crop being grown on the Lennes farm in 1984.

IT IS THEREFORE ORDERED that:

1. The milk check assignments presently payable to the following entities are hereby terminated as of the date of this order:

| | |
|---|---|
| Community State Bank of Alexandria— | $234.01 per month |
| | $177.30 per month |
| Massey-Ferguson— | $984.95 per month |
| Gerald D. Adamson— | $900.00 per month |

First National Bank          $2500.00 per month
of Fergus Falls—

2.  Debtor is allowed the use of the following collateral and cash collateral:

All livestock and sales proceeds therefrom.

3.  Debtor shall grant to First National Bank of Fergus Falls a replacement lien in all new livestock purchased or born with the same validity and priority as its prepetition lien.

4.  All other motions of all parties are denied.