**In the Matter of Jerry Allen JOHNSON and Catherine Bernice Johnson, Debtors.**

**Bankruptcy No. MM11–84–01638.**

United States Bankruptcy Court, W.D. Wisconsin.

March 1, 1985.

Jeffrey P. White, Law Offices of Jeffrey P. White, Chicago, Ill., for debtors.

Timothy B. McKinley, McKinley Law Office, Dodgeville, Wis., for Mildred Nondorf.

Sheree Gowey, Asst. U.S. Atty., Madison, Wis.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

On August 30, 1984, the Johnsons filed for bankruptcy under chapter 11, and have continued to operate their dairy farm as debtors in possession. Their principal source of income is the sale of milk to the Meister Cheese Company. Substantial amounts are deducted from the Johnsons' monthly milk checks to be paid to Highland State Bank ("Highland") and the Farmers Home Administration ("FmHA"). Johnsons have moved this court for an order allowing them to use the entire milk check and suspending the assignments of milk proceeds to Highland and FmHA. The Meister Cheese Company has retained all milk check payments to these creditors subsequent to the filing for bankruptcy, pending this court's determination of the Johnsons' motions.

On February 23, 1983, the Johnsons obtained a loan from Highland to purchase dairy cows. In return, the Johnsons granted Highland a purchase money security interest in collateral described in the Financing Statement as, "Holstein Cows 14, ear tag names as follows: Libby, Lila, Tracy, Hope, Bambi, Maxine, Val, Elsie, Patty, June, Kerly, WT, Jiffy, Ruby and 8 Heifers, Bess, Tess, Beachnut, Misty Jessie, Trikie, Celia Ruby Jane, and 5 Calves, Kerlys, Pollys, Jiffyes, Libbys and Bambis and the increase thereof from all above cattle." The form provided that proceeds and products of the stated collateral were also covered. On February 25, 1983, Highland filed the financing statement with the Register of Deeds in Iowa County. Currently, milk proceeds of $2,860.00 per month are being deducted in favor of Highland pursuant to an Assignment of Proceeds of Dairy Products. On the date the Johnsons' bankruptcy petition was filed the balance due Highland was approximately $50,000.00.

FmHA holds a junior security interest in Johnsons' dairy cows named on Highland's financing statement and a security interest in remaining livestock and other collateral including real estate. On April 5, 1977, FmHA filed a financing statement with the Register of Deeds in Iowa County covering, in pertinent part, livestock, farm products and the proceeds thereof. A continuation statement was filed on March 31, 1982. Currently, milk proceeds of $2,860.00 per month are being deducted in favor of FmHA pursuant to an Assignment of Pro-

ceeds of Dairy Products. On the date the Johnsons' bankruptcy petition was filed the balance due FmHA was approximately $500,000.00.

The Johnsons argue that neither Highland nor FmHA has a valid security interest in proceeds from the sale of milk, and that even if they do, 11 U.S.C. § 552 disallows a prepetition security interest in proceeds from the sale of milk to continue after a chapter 11 proceeding is commenced. Alternatively, the Johnsons assert that if Highland's and FmHA's security interests continue in the milk proceeds, adequate protection exists, allowing the Johnsons to use the cash collateral under 11 U.S.C. § 363.

*Do Highland and FmHA hold perfected security interests in Johnsons' milk proceeds?*

■ It is uncontested that Highland and FmHA perfected their security interests in the Johnsons' livestock by filing their respective financing statements in the county where the livestock was located. WIS. STATS. §§ 409.302(1), 409.303(1), 409.309 and 409.401. Highland's financing statement also gives it a security interest in proceeds and products of the livestock, while FmHA's financing statement covers farm products and proceeds thereof. Farm products include milk produced by livestock. WIS.STAT. § 409.109, *see also, In Re Dias*, 24 B.R. 542, 9 B.C.D. 1088 (Bankr. D.Idaho 1982). In *In Re Weber*, 29 U.C.C. Rep.Ser. 690 (Bankr.W.D.N.Y.1980), the court held that milk was within the description of collateral set forth in the security agreement as dairy cattle and "Products of such Goods, and in Proceeds thereof in any form." The phrase "all livestock and products" has been held to be sufficient under WIS.STAT. § 409.402(1) to give "notice that further inquiry would be necessary to ascertain the existence or nonexistence of prior encumbrances" on milk. *Nat'l. Accept. Co. of Am. v. Doede*, 78 F.R.D. 333,

336 (W.D.Wis.1978); *In Re Becker*, 46 B.R. 17 (Bankr.W.D.Wis.1984), *appeal pending.*

Highland and FmHA also have perfected security interests in proceeds from the sale of the Johnsons' milk because their financing statements explicitly cover proceeds of farm products, *In Re Cawthorn*, 33 B.R. 119 (M.D.Tenn.1983), and because under Wisconsin law perfected security interests in farm products attach to the proceeds from the sale of the farm products,[1] WIS. STAT. § 409.306, *see also In Re Hollie*, 42 B.R. 111, 119 (Bankr.M.D.Ga.1984). Any additional security interests that Highland and FmHA may have obtained in the milk checks as "accounts" under the Assignments of Proceeds of Dairy Products are superfluous. *Dias*, 24 B.R. 542, 9 B.C.D. at 1090. In *In Re Pendleton*, 40 B.R. 306 (Bankr.W.D.Ky.1984), debtors in possession were found to have rightly rejected an assignment of milk proceeds to a creditor as an executory contract. The court, however, held that the debtors were still subject to the creditor's rights in all proceeds from milk sales arising from a financing statement covering "livestock and products thereof, and proceeds" 40 B.R. at 311. *See also In Re Liles v. Raymond*, 24 B.R. 627 (Bankr.M.D.Tenn.1982). Thus, it is clear that at the time this bankruptcy case was filed, both Highland and FmHA had perfected security interests in the milk the Johnsons sold to Meister Cheese Company and in the proceeds of those sales.

*Does section 552 preclude enforcement of Highland's and FmHA's security interests against milk sold after bankruptcy filed?*

The Johnsons assert that 11 U.S.C. § 552 disallows the security interests in proceeds arising after their bankruptcy petition was filed. Section 552 provides:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after commencement of the case is not subject to any

---

**1.** Whether Highland's and FmHA's security interests in the *milk* continue after sale, *compare* WIS.STAT. § 409.307(1) (buyer does not take farm products free from lien) *with* WIS.STAT.

§ 409.306(2) (lien continues *unless* sale authorized), is irrelevant; *but see In Re Thomas*, 38 B.R. 50 (Bankr.D.N.D.1983) and *In Re Quaal*, 40 B.R. 619 (Bankr.D.Minn.1984).

lien resulting from any security agreement entered into by the debtor before commencement of the case.

(b) Except as provided in section 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case orders otherwise.

■ Under section 552 property acquired by the estate after the filing of a petition in bankruptcy is subject to a prepetition security agreement lien only if the property is the "proceeds, product, offspring, rents or profits" of secured prepetition property. Milk is the "proceeds, product, offspring, rents or profits" of prepetition livestock within the meaning of section 552. *Hollie*, 42 B.R. at 119, *see also Dias*. In *Hollie* FmHA had a perfected security interest in the debtors' livestock and farm products. The court explained that since milk was a product of livestock, it was a farm product under UCC § 9–109(3), and FmHA's security interest attached to all proceeds from the sale of debtors' milk under UCC § 9–306(2). The court then held that FmHA's security interest extended after the debtors' bankruptcy filing, because it satisfied the requirements of section 552(b). Section 552(b) is also applicable to Highland's and FmHA's security interests. Both creditors entered into security agreements with the Johnsons prior to the Johnsons' bankruptcy filing, in which the security interests covered livestock and the products and proceeds of the livestock. All the

elements of section 552(b) are met and thus, Highland's and FmHA's security interests extend to the Johnsons' postpetition milk and milk proceeds.

Some courts have relied upon the final phrase of section 552(b) which provides: "except that the court, after notice and a hearing and based on the equities of the case, orders otherwise" to determine that no milk check assignments can survive bankruptcy. *See In Re Lawrence*, 41 B.R. 36 (Bankr.D.Minn.1980), *In Re Serbus*, 48 B.R. 5 (Bankr.D.Minn.1984), *cf. In Re Texas Tri-Collar, Inc.*, 29 B.R. 724, 10 B.C.D. 728 (Bankr.W.D.La.1983). Even as initially stated by the courts this application of equity requires a careful analysis of the circumstances in which each case arises, thereby precluding the formulation of a rule of law which may provide guidance for future cases. Furthermore, equity is to act only where legal remedies are inadequate. *Trainor v. Mutual Life Ins. Co. of New York*, 131 F.2d 895 (7th Cir.1943); *Antigo Superior N. Home, Inc. v. First Federal*, 51 Wis.2d 196, 186 N.W.2d 265 (1971); *Kramer v. Bohlman*, 35 Wis.2d 58, 150 N.W.2d 357 (1967).[2] In as much as the statutory prescription for adequate protection of interests in property used by the debtor will be demonstrated below to meet substantially the same concerns, the application of an unstructured notion of equity is unnecessary and unjustified.

*Are the Johnsons entitled to use the milk proceeds under section 363?*

■ The proceeds from the sale of the milk are "cash collateral" as defined in 11 U.S.C. § 363: "cash collateral means ... cash ... whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds ... of property subject to a security interest as provided in section 552(b)...." Highland and FmHA hold security interests in the milk and milk proceeds. However, the milk proceeds are also property of

---

**2.** *Cf.* Z. CHAFEE, *Some Problems of Equity*, in THE THOMAS M. COOLEY LECTURES 321–36 (1950).

the estate under 11 U.S.C. § 541(a)(6), and the fact that security interests in favor of Highland and FmHA continue in them does not alter their character. *Dias*, 24 B.R. 542, 9 B.C.D. at 1090.

▌ When a creditor opposes a debtor's proposed use of cash collateral, the guiding inquiry is whether its security interests are "adequately protected" absent the additional protection that the receipt of the cash collateral would provide. 11 U.S.C. § 363(e), *In Re George Ruggiere Chrysler-Plymouth*, 727 F.2d 1017, 1019 (11th Cir. 1984). If Highland and FmHA are adequately protected the Johnsons may be authorized to use the milk proceeds under section 363. The court in *In Re Aegean Fair, Inc.*, 33 B.R. 745 (Bankr.D.Mass. 1983), explained

> the creditor's right to adequate protection is limited to the lesser of the value of the collateral or the amount of the secured claim.... [T]he value of the property on the day the petition is filed determines the amount of the claim entitled to adequate protection. Thus, to the extent that the [creditor's] lien claim exceeded the value of the Debtor's collateral on the day of the filing, the claim was an unsecured claim ... one which was not entitled to adequate protection.

33 B.R. at 748 (cites omitted), *see also In Re Ausherman*, 34 B.R. 393 (Bankr.N.D. Ill.1983).

Highland and FmHA held security interests in postpetition milk proceeds which are entitled to adequate protection. The purpose of adequate protection under section 363(e) is to insure that the secured creditor receives in value essentially what he bargained for. H.R.Rep. No. 595, 95th Cong. 1st Sess. 338–39 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. The value of the security interests in milk proceeds on the date of filing included both the value of the milk then on hand or delivered to the dairy but unpaid (both of which are pre-

sumed in the absence of any evidence to be nominal) and the value of a stream of payments which would materialize only if the cows were properly fed and milked in the future. The security interests did not entitle the creditors to immediate possession of the proceeds unless the Johnsons were in default, and they were current under their obligations to both creditors. Absent the filing of this chapter 11 case the Johnsons would have had to cease producing milk in the very near future. Thus, at the time of filing the projected stream of payments was very short. Even if production would have continued it would have done so at a substantial cost for labor and for feed. As to the latter cost it would have been paid in large part by the transformation of one type of collateral, crops and feed, into another, milk. The security interests in postpetition milk proceeds would have afforded the creditors little more than nominal additional protection to their other security interests, on the date of filing.

Currently, the Johnsons assert that without full use of all milk proceeds they will be unable to feed and maintain their livestock, and will be unable to effectuate a plan of reorganization. The creditors appear to be demanding adequate protection for cash collateral arising from sales of milk at the expense of their other collateral. Much of the decrease in the protection afforded Highland's and FmHA's security interests in milk proceeds caused by the Johnsons use of the proceeds to purchase feed supplement and fund the continued operation of the farming enterprise, will be offset by an apparent increase in the protection of the creditors' security interests in the value of the livestock by the continued care and milking of the cows. If the cows are not cared for and milked regularly their value will drop precipitously. *See Dahlquist v. First National Bank in Sioux City, Iowa*, 40 B.R. 969 (D.S.D. 1983).[3]

---

**3.** Where cattle are being fed and crops are being irrigated and cared for, and both are subject to security interests, it is in the interests of all parties to continue doing so ... and the use of cash collateral for such purposes is clearly necessary....
        ....

Often debtors are allowed to use cash collateral by providing adequate protection in the form of a substitute lien on noncash collateral. *See, e.g. In Re Charles McArthur Dairies, Inc.,* 16 B.R. 123 (Bankr.M.D.Fla.1981). In the instant case, however, Highland and FmHA already hold numerous security interests in the Johnsons' farm and personal property. "The test of whether a creditor's cash collateral is adequately protected is not whether the creditor's claim is fully secured. Rather, the test is whether the debtor has provided a method of ultimately giving creditors the value of their cash collateral." Miller, *Adequate Protection in Respect of the Use, Sale or Lease of Property,* 1 Bankr.Dev.J. 47, 80 (1984). The Johnsons are continuing to operate their dairy farm as debtors in possession. By so doing they are minimizing the risk of the milk cows losing value during the time necessary to reorganize. There is no reason to believe that if they were to stop milking either secured creditor would receive as much.

■ While the Johnsons have demonstrated a willingness to effectuate a plan of reorganization, I cannot determine whether an effective reorganization is probable without a proposed plan. Use of the milk proceeds at this point, however, makes it more likely that a plan will be effectuated and that there will be a stream of future milk proceeds in which the creditors will still hold security interests. Accordingly, the Johnsons will be allowed to use the cash collateral claimed by Highland and FmHA, subject to a review at anytime after sixty days from the date of this order, at which time upon the creditors' renewed request for a hearing it will be determined whether Highland and FmHA are adequately protected by the Johnsons' assurances, through formulation of a chapter 11 plan, that an effective reorganization is probable. Accordingly, it is hereby

ORDERED that the debtors' motion to use cash collateral from milk proceeds as

When cattle are fed and crops cared for, the value of the bank's security therein is enhanced.

described and conditioned in this opinion is hereby granted.