**In re Eugene THOMAS and Monica Thomas, Debtors.**

**Bankruptcy No. 83–05211.**

United States Bankruptcy Court,
D. North Dakota.

Dec. 28, 1983.

---

Joseph Vogel, Mandan, N.D., for debtor.

Benjamin Pulkrabek, Mandan, N.D., for Norwest Bank, Mandan.

U.S. Trustee William Westphal, Max Rosenberg, Bismarck, N.D., for Creditors Committee.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

This matter came before the Court upon the Motion of Norwest Bank, Mandan (BANK), for relief from automatic stay, the Bank asserting a perfected security interest in all milk produced by cows owned by the Debtors. On December 6, 1983, a hearing was held and the Court denied the motion for the reason that the Bank failed in its burden with respect to the Debtors' equity in such collateral. The Court indicated it would reconsider its position on the issue of whether, under applicable law, the Bank held a valid security interest in the proceeds derived from the sale of the milk. This is the issue now before the Court.

The Debtor, on February 11, 1981, entered into a security agreement with the Bank whereby the Bank was given a security interest in:

"All farm products of debtor, whether now owned or hereafter acquired, including but not limited to

(i) all livestock and their young, products thereof, and produce thereof..."

Perfection was accomplished by the filing of a standard form financing statement which set forth that it covered:

"All cattle and other livestock now owned by the debtor or hereafter acquired together with the increase from said livestock and all feed and grain."

The box was checked indicating that products of the collateral were also covered.

The Debtor is engaged in a dairy operation and every other day the creamery, Capital City Foods, picks up milk from his operation and within a week he receives payment from the creamery. The Debtor has executed a payment authorization with the creamery whereby it is directed to pay 15% of the weekly milk payments to the Bank. It is the Bank's position that, by virtue of the security agreement herein set out, it is secured as to all the proceeds derived from the sale of the Debtor's milk.

At the outset, the Court must conclude that under North Dakota Century Code § 41-09-09(3) (U.C.C. 9-109(3)) the term "farm products" as set out in the Bank's security agreement includes the milk which is a product of the Debtor's cows. This provision, however, states that the term "farm products" includes products of livestock such as milk *if* they are in the possession of a debtor. In the case before the Court, the milk in question does not remain with the Debtor for any length of time but is marketed every other day. The security agreement does not prohibit such sale nor does it condition the sale upon the Bank's approval. In any event, the Bank was aware of the fact that the product was being disposed of since it was the recipient of a portion of the creamery's weekly payments. Furthermore, given the nature of the Debtor's dairy operation, it would have been anticipated that the milk product would be marketed as opposed to being retained by the Debtor.

It is clear under section 9-109 that the Bank would have a valid security interest in the milk so long as it remained in the Debtor's possession. However, once the milk leaves the Debtor's possession, the Bank's status becomes dependent upon

North Dakota Century Code § 41–09–27 (U.C.C. 9–306) which defines a secured party's rights in proceeds of collateral upon disposition. The money due the Debtor from the creamery as a result of the milk sales are proceeds of a "farm product". Subsection 2 of 9–306 provides that a security interest in collateral continues even after its disposition *unless* the disposition was "authorized by the secured party in the security agreement or otherwise ..." Courts interpreting this subsection have held it to mean that when a creditor permits a debtor to sell collateral from time to time as he chooses and relies upon the debtor for payment, declining to require the debtor to obtain written authority, the creditor thereby acquiesces in and consents to the sale, losing its secured status in the process. *United States v. Central Livestock Association, Inc.*, 349 F.Supp. 1033 (D.C.N.D.1972). Authorization for a disposition under subsection 2 may be implied from the party's conduct, from their course of dealing or from usages of trade. *In re Mid-Atlantic Piping Products. of Charlotte*, 24 B.R. 314 (Bkrtcy.W.D.N.C.1982). In the matter before the Court, the Bank obviously did not intend to prohibit a marketing of the Debtor's milk product. The very nature of the Debtor's business makes it clear that at the time the security agreement was entered into, a sale of farm products under the guise of milk was contemplated by both parties. From these factors and based upon the law cited, the Court concludes that the Debtor's periodic marketing of milk was authorized by the Bank and such authorization defeats the Bank's security interest in the proceeds derived from the sale.

IT IS THEREFORE ORDERED that the claim of Norwest Bank—Mandan shall be treated as an unsecured claim to the extent of any proceeds derived from the sale of milk to the dairy.