**In re Bruce LAWRENCE and Kayla Lawrence, Debtors.**

**Bankruptcy No. 3-83-1980.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 25, 1984.

Timothy Moratzka, Hastings, Minn., for debtors.

Michelle Vaillancourt, St. Paul, Minn., for movant Blue Earth State Bank.

## FINDINGS OF FACT CONCLUSIONS OF LAW

JOHN J. CONNELLY, Bankruptcy Judge.

This matter came before the Court on the motion of the Blue Earth State Bank (hereinafter "Bank") for an order providing the Bank with adequate protection of its security interests or, in the alternative, relief from the automatic stay to foreclose its security interests. The Court entered an Order denying the Bank's request for relief from the automatic stay and granted it adequate protection in the form of a replacement lien in after-acquired and newly-born livestock as well as certain periodic payments.

The Court's Order of February 9, 1984 stated that, inter alia, the Bank's pre-petition perfected security interest covering all existing and after-acquired farm products and their proceeds did not extend to milk or milk proceeds produced by the Debtors' cows post-petition. At the time the Court issued its Order, it did not have the oppor-tunity to fully explain its reasoning under-lying its determination that 11 U.S.C. 552(b) was inapplicable to the present situa-tion. The Court now makes the following supplemental memorandum in support of its February 9, 1984 Order.

11 U.S.C. 552(a) provides that property acquired by the debtor or the estate post-petition is not subject to a lien despite the existence of any pre-petition security agreements which would otherwise encom-pass the property as collateral. This gen-eral rule is an explicit embodiment of the "fresh start" policy underlying the entire Bankruptcy Code. Cutting off a security interest post-petition facilitates a debtor's ability to reorganize by giving the debtor assets which he acquires post-petition free of his past liabilities for use in the reorga-nization process.

The general rule of Section 552(a) is sub-ject to a very narrow exception described in Section 552(b). That latter section limits the "cutoff" rule of Section 552(a) when the creditor's pre-petition security interest extends to proceeds or products of proper-ty acquired by the debtor before the com-mencement of the case. This exception was intended to protect a creditor's interest in *particular* pre-petition goods or collater-al from being terminated by the filing of a bankruptcy petition. The exception is a very limited one intended to cover the situ-ation where a creditor holds a security in-terest in raw materials, and after the filing of a bankruptcy petition, the debtor changes their form by converting them into inventory. 124 Cong.Rec.H. 11,097–11,098 (Sept. 28, 1978); S. 17,414 (Oct. 6, 1978). In this case, the exception of Section 552(b) would protect the creditor's interest in the finished product.

There is no question in this Court's mind that milk produced post-petition or the pro-ceeds of post-petition milk production are not subject to the Section 552(b) exception. To interpret 552(b) otherwise would result in the exception swallowing the rule. Sec-tion 552(b) was intended to protect a credi-tor's security interest in collateral existing

pre-petition from being cut off midstream by a bankruptcy. Milk and proceeds existing pre-petition as well as post-petition proceeds resulting from milk produced pre-petition are subject to the Bank's security interest pursuant to Sections 552(b) and 363(c). However, milk produced post-petition is an asset coming into existence totally after the filing and not intended to be covered by the 552(b) exception.

Even if the Court had determined that the post-petition milk was subject to the Bank's security interest under 552(b), the Court would reach the same end result. Section 552(b)'s exception has a proviso giving the Court power to terminate a security interest despite the protection otherwise provided by 552(b) based on balancing the equities of the case. In the course of such consideration, the Court evaluates the expenditures of time, labor, and funds relating to the collateral, the relative position of the secured party, and the overall rehabilitative theme of bankruptcy law. In this case, the Debtors continue to invest time, labor, and money in the operation. The Bank is oversecured and is to receive replacement liens in livestock to the extent the Debtors use cash collateral, as well as certain periodic payments. The Bank is also entitled to make a claim for an administrative expense pursuant to Section 507(b) to the extent the "adequate protection" proves to be subsequently inadequate. The Bank is also free to bring another motion for adequate protection later in the case should circumstances so warrant.

Finally, this Court is conscientious in interpreting the Code in a manner consistent with the "fresh start" and "rehabilitative" themes of bankruptcy law. The Code was not designed with farmer bankruptcies in mind. There are many special problems inherent in a farmer bankruptcy case. Aside from the constant fluctuations in prices of farm products, the seasonal nature of grain farming and required cash flow and financing problems require special consideration. To provide a debtor with a source of cash which is unencumbered and can be used to revitalize a business part of a "fresh start" and clearly facilitates rehabilitation.

For all the reasons discussed above, the Court finds the post-petition milk and proceeds to be free of any security interest and not cash collateral within the meaning of the Code. This Order constitutes the Findings of Fact and Conclusions of Law of this Court within respect to the issue of 11 U.S.C. § 552.