In re Ydola PIGEON, a/k/a Eugene Ydola Pigeon, and Olynda J. Pigeon, Debtors.

Ydola PIGEON, a/k/a Eugene Ydola Pigeon, and Olynda J. Pigeon, Plaintiffs,

v.

PRODUCTION CREDIT ASSOCIATION OF MINOT; and Cass Clay Creamery Association, Defendants.

Bankruptcy No. 84–05551.
Adv. No. 84–7162.

United States Bankruptcy Court,
D. North Dakota.

Jan. 7, 1985.

---

Daniel L. Wentz, Fargo, N.D., for debtors/plaintiffs.

Richard P. Olson, Minot, N.D., Roger J. Minch, Fargo, N.D., for defendant PCA of Minot.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Plaintiffs, Ydola and Olynda Pigeon, filed on December 20, 1984, a Complaint seeking a court order enjoining the Defendant, Production Credit Association of Minot, from asserting an interest in the proceeds of milk produced by the Debtors' operations and alternatively seeking use of certain cash collateral. A Temporary Restraining Order prohibiting Production Credit Association from collecting milk proceeds was entered December 21, 1984. The Court dismissed without prejudice the Debtors' request for use of cash collateral and proceeded December 28, 1984, upon agreement of the parties, with trial on the Debtors' request for a permanent injunction.

## FINDINGS OF FACT

The Debtors, Ydola and Olynda Pigeon, filed for relief under Chapter 11 of the Bankruptcy Code on November 7, 1984. The Pigeons operate a dairy farm in Rolette County, North Dakota. Cass Clay Creamery is the sole purchaser of the Pigeons' milk and milk products. Production Credit Association received, through a security agreement executed by the Debtors on November 10, 1981, an interest in farm products, specifically including milk, and all accounts which might arise from the sale or the disposition of farm products. The security agreement authorized the Pigeons to sell milk provided 40% of all milk proceeds were paid to PCA of Minot. Production Credit filed a financing statement with the Register of Deeds for Rolette County reflecting their claimed interest in dairy products and all accounts arising from the sale of dairy products of livestock owned by the Pigeons. The security agreement of November 10, 1981, specifically disclosed that Production Credit's interest extended to "the following products of livestock and poultry: milk". The financing statement filed with the Register of Deeds for Rolette County on November 10, 1981, provided that it covered "all dairy products and all accounts arising from the sale of dairy products of livestock". The Pigeons additionally transferred to Production Credit Association, through a security agreement executed February 25, 1982, a security interest in all equipment, livestock, and the proceeds of such collateral. Production Credit Association filed a financing statement indicating its interest in all farm machinery, equipment and livestock with the Register of Deeds for Rolette County, North Dakota. Ydola Pigeon testified that he believes he presently owes Production Credit approximately $164,000.00.

## CONCLUSIONS OF LAW

Pursuant to section 41–09–16 (U.C.C. § 9–203) of the North Dakota Century Code, a security interest arises when a debtor pledges collateral in a security agreement, value is given, and the debtor obtains rights in the collateral pledged as security. There is no dispute in this instance that prior to bankruptcy Production Credit financed the Debtors' dairy opera-

tion and in return received a valid security interest in livestock, equipment and milk products. Additionally, there is no dispute that Production Credit properly perfected its security interests through the financing statements it filed with the Register of Deeds for Rolette County, North Dakota. Pursuant to section 41–09–27(2) of the North Dakota Century Code, the security interest claimed by Production Credit continues in the proceeds of its collateral. Under N.D.C.C. § 41–09–27(1), proceeds of collateral "includes whatever is received upon the sale, exchange, collection, or other disposition of collateral or proceeds." N.D.Cent.Code § 41–09–27(1) (1983). The Debtors claim, however, that by reason of section 552 of the Bankruptcy Code they may market milk produced subsequent to the commencement of the bankruptcy proceeding free of any interest of Production Credit.

Section 552(a) of the Bankruptcy Code clearly provides that any security interest given by the debtor prior to commencement of his bankruptcy proceeding does not attach to property which is acquired by the bankruptcy estate after commencement of the bankruptcy case. *See* 11 U.S.C. § 552(a). Thus, a creditor's interest in property acquired through a security agreement or an assignment given prior to commencement of a bankruptcy proceeding does not extend to like property which is acquired through the debtor's operations after the bankruptcy filing. *See In re Gross-Feibel Co.*, 21 B.R. 648 (Bankr.S.D. Ohio 1982). A debtor who acquires interests in milk or other farm products after he has filed for bankruptcy relief arguably acquires those interests free of any claim a creditor may assert based upon pre-filing agreements. Nevertheless, this prohibition against the creditors' continuing interests in property acquired by the debtor post-filing is qualified under 11 U.S.C. § 552(b). Section 552(b) of the Bankruptcy Code provides, as follows:

> Except as provided in section 363, 506(b), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b). Generally, a creditor retains under section 552(b) an interest in proceeds and products of property in which it acquired an interest prior to commencement of the debtor's bankruptcy proceeding. The argument in support of Production Credit's continuing interest in milk produced by the Debtors' operation is twofold. First, if section 552(b) is ambiguous, the Court must look to state statutes which define the terms used in the ambiguous statute. This Court, in its decision *In re Thomas*, 38 B.R. 50 (Bankr.D.N.D.1984), looked to the definition of farm products under state commercial statutes when construing the term "products" under section 552(b) of the Bankruptcy Code. It appears more appropriate to the Court, however, that if application of a term in an ambiguous statute can only be made upon reference to collateral sources, it is most appropriate to examine legislative history and not definitions contained in state statutes. The legislative history supporting section 552(b) of the Bankruptcy Code specifically notes, as follows:

> Section 552(b) represents a compromise between the House bill and the Senate amendment. Proceeds coverage, but not after acquired property clauses, are valid under title 11.

124 Cong.Rec.H. 11,097–11,098 (September 28, 1978); S. 17,414 (October 6, 1978). Section 552(b) would not support a continuing interest in farm products where those prod-

ucts are clearly property acquired by the debtor subsequent to his filing for bankruptcy relief. Since *Thomas* failed to examine the legislative history supporting 11 U.S.C. § 552(b), the rationale of that decision must be rejected.

██ Production Credit may additionally argue that section 552(b) is unambiguous and the plain meaning of that statute would not preclude a continuing interest in farm products. Section 552(b) recognizes a creditor's continuing interest in products, offspring, or rents of that creditor's pre-petition collateral. Read in conjunction with all the terms contained in the statute, products might be construed to include farm products such as milk obtained from a dairy herd just as calves would be considered offspring of livestock. This Court has previously noted, however, that even where a statute is unambiguous on its face, legislative history must be examined in order to determine whether that statute is applied in a manner consistent with congressional intent. *See In re Butts*, 45 B.R. 34 (Bankr.D.N.D.1984). The legislative history of section 552 previously examined in this decision sets out the Bankruptcy Code's general support of a creditor's continued proceeds coverage but not an extension of interests into newly-acquired property. *See* 124 Cong.Rec.H. 11,097–11,098 (September 28, 1978); S. 17,414 (October 6, 1978). The legislative history further notes that the focus upon proceeds under section 552(b) "is not limited to the technical definition of that term in the U.C.C., but covers any property into which property subject to the security interest is *converted.*" H.R. Rep.No. 595, 95th Cong. 1st Sess. 376–377 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6333 (emphasis added). Similarly, the continuing interest in "products" contemplated under section 552 does not include by-products or fruits of the principal collateral held by the debtor. The term "products" under section 552(b) of the Bankruptcy Code must be limited to those instances where the nature of the creditor's collateral is altered so substantially that the collateral is transformed into a new property. While milk may indeed be a farm product as set out under section 41–09–09(3) of the North Dakota Century Code, milk is not a product of livestock in the sense that the livestock's identity has been subsumed by the creation of the milk. The legislative history of 11 U.S.C. § 552(b) supports this conclusion. *See In re Lawrence*, 41 B.R. 36, 37 (Bankr.D.Minn. 1984). This Court must find that the milk produced by the Debtors subsequent to their filing for bankruptcy relief is newly-acquired property, distinct from Production Credit's interest in the livestock, and is therefore free of any interest Production Credit may claim based upon pre-filing agreements.

In a recent decision from the United States District Court for the District of North Dakota, it was determined that section 552(b) operates to extend a creditor's valid pre-petition security interest in a debtor's dairy herd and its proceeds to those milk proceeds received by the Debtors subsequent to filing their bankruptcy petition. *See In re Nielsen*, 48 B.R. 274 (D.N.D. 1984). The Court in its decision failed, however, to analyze the legislative history supporting section 552(b). This Court finds, therefore, that the decision in *Nielsen* is not fully dispositive of the issue before the Court.

Accordingly, and for the reasons stated,

IT IS ORDERED:

That Production Credit Association of Minot is permanently enjoined from claiming an interest on the basis of pre-filing agreements in milk produced by the Debtors' operations after November 7, 1984.