In re Truman (NMN) POTTER, Norma Jean Potter, Debtors.

Bankruptcy No. 3–82–01949.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 30, 1985.

John W. Gill, Jr., U.S. Atty., J. Edgar Schmutzer, Asst. U.S. Atty., Knoxville, Tenn., for U.S.

Robert B. Carter, Johnson City, Tenn., for debtors.

Ferdinand Powell, Jr., Johnson City, Tenn., for Trustee.

## MEMORANDUM AND ORDER

CLIVE W. BARE, Bankruptcy Judge.

At issue are the rights of the trustee, the debtors, and the United States to certain funds paid to the Trustee by Dairymen, Inc. totaling $30,456.13. There are no disputed facts.

### I

On March 14, 1979, April 29, 1980, and February 12, 1981, the United States of America, acting by and through the Farmers' Home Administration, an agency of the United States Department of Agriculture (United States), obtained three security agreements from Truman Potter and Norma Jean Potter (debtors) to secure various loans. The debtors granted the United States a security interest in all crops produced on certain lands located in Johnson County, Tennessee, all their cattle and other livestock, and all farm products and proceeds from the sale thereof. The United States' security interest in the debtors' crops, cattle, and farm products was perfected by recording two financing statements in Johnson County, Tennessee, on March 15, 1979, and April 20, 1980.

On December 22, 1982, the debtors filed a chapter 11 bankruptcy petition; their case was converted on July 29, 1983, to a case under chapter 7. The United States timely filed a proof of claim for its secured interest in the debtors' estate. When their case commenced in 1982, debtors were indebted to the United States in the approximate amount of $285,300.00. This indebtedness had increased to approximately $293,000.00 when their case was converted to chapter 7.

On September 21, 1983, the debtors made application to amend their voluntary bankruptcy petition to claim an exemption under Tenn.Code Ann. § 26-2-102 (1980) for "money in Johnson County Bank and holdback from Dairymen." On October 23, 1984, the trustee filed his final report, listing the following funds received from Dairymen:

| DATE RECEIVED | SOURCE OF RECEIPT | AMOUNT |
|---|---|---|
| 08–15–83 | milk check | $ 6,528.87 |
| 09–23–83 | milk check | 4,998.64 |

| DATE RECEIVED | SOURCE OF RECEIPT | AMOUNT |
|---|---|---|
| 10–17–83 | milk check | $ 4,777.49 |
| 11–14–83 | milk check | 4,195.36 |
| 12–16–83 | milk check | 2,451.68 |
| 12–16–83 | Equity Fund [1] | 391.57 |
| 01–20–84 | Equity Fund | 5,373.37 |
| 05–30–84 | Equity Fund | 208.81 |
| 05–30–84 | Equity Fund | 1,530.34 |
| | | $30,456.13 |

The trustee seeks a determination of his rights in the funds. The debtors assert the security interest of the United States does not attach to the "milk checks" paid to the trustee by Dairymen. According to the debtors, the funds in question were acquired by the estate after the commencement of the case and are not subject to any lien resulting from a security agreement entered into before commencement of the case. 11 U.S.C.A. § 552(a) (1979). The debtors also question the rights of the United States to the "equity funds."

## II

In relevant part, the security agreements entered into between the United States and debtors create a security interest in:

> "*Item 3.* All livestock (except livestock and poultry kept primarily for subsistence purposes), fish, bees, birds, furbearing animals, other animals used for commercial purposes, *other farm products*, and supplies, now owned or hereinafter acquired by Debtor, together with all increases, replacements, substitutions, and additions thereto, including but not limited to the following:" (A list which includes Debtors' milk cattle follows.)

(Emphasis added.)

■ The security agreements of the United States therefore covered "all farm products" of debtors' cows. According to Tenn.Code Ann. § 47–9–109(3) (1979), milk is defined as a "farm product." Tenn.Code Ann. § 47–9–109 (1979) states in part:

> Goods are: ... (3) "farm products" if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states

(such as ginned cotton, wool, clip, maple syrup, *milk* and eggs), and if they are in possession of a debtor engaged in raising, fattening, grazing or other farming operations.

(Emphasis added.)

Milk is thus a "farm product," and the milk from debtors' cows was covered by the security agreement. Pursuant to Tenn. Code Ann. § 47–9–306 (1979), the United States' security interest in the milk of the debtors' cows continues in the identifiable proceeds.

■ The proceeds described by the trustee in his final report as "Dairymen's—Equity Fund" represent monies held back by Dairymen from the purchase payments it made when buying milk from the debtors. These monies are prepetition funds held by Dairymen and turned over to the trustee after the debtors had gone out of business. The United States is entitled to the Equity Fund monies totaling $7,504.09.

## III

The United States also asserts a perfected security interest in the postpetition funds paid to the trustee by Dairymen totaling $22,952.04 as "milk checks."

Section 552 of the Bankruptcy Code controls the effect of a security interest on postpetition proceeds. Section 552(a) states that after-acquired property is not subject to any lien resulting from a security agreement entered into by the debtor before commencement of the case. Section 552(b), however, includes exceptions when such a secured interest would extend to after-acquired property. With exceptions not pertinent, § 552(b) provides that if a creditor's security interest extends to "property of the debtor acquired before the commencement of the case and to ... proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security

---

1. "Equity fund" moneys represent funds held back by Dairymen pursuant to an agreement

with the debtors.

agreement and by applicable nonbankruptcy law...."

In the case before this court, the security agreements cover livestock used for commercial purposes and "other farm products ... now owned *or hereinafter acquired by Debtor....*" As stated by Judge Thinnes in *Sandage Real Estate, Inc. v. Liebe:*

> Under section 552(a), the commencement of bankruptcy cuts off any security interest in postpetition property that would otherwise arise by virtue of an after-acquired property clause in a prepetition security agreement unless the exception in subsection (b) applies. Essentially, the § 552(b) exception allows a secured creditor to assert a security interest in postpetition property if its prepetition security agreement extends to "proceeds, product, offspring, rents or profits." In other words, "proceeds, product, offspring, rents or profits" of secured collateral may be secured by a prepetition security agreement if, but only if, the primary collateral was acquired by the debtor prior to the commencement of the case.

41 B.R. 965, 968 (Bankr.N.D.Iowa 1984) (footnote omitted).

■ The United States is entitled to the $22,592.04, less expense of administration paid to the trustee as "milk checks." See *United States v. Hollie,* 42 B.R. 111 (Bankr.M.D.Ga.1984). *Contra In re Lawrence,* 41 B.R. 36 (Bankr.D.Minn.1984) (prepetition perfected security interest covering after-acquired farm products and proceeds does not extend to milk produced postpetition). Further, the rights of the United States are superior to the debtors' exemption rights in such funds.

IT IS SO ORDERED.