**In re Dale T. UNDERBAKKE and Eleanor Underbakke, Debtors.**

Bankruptcy No. 85-00768W.
Contested Nos. 1921, 2933.

United States Bankruptcy Court,
N.D. Iowa.

May 9, 1986.

---

Dumbaugh & Childers, P.C., Cedar Rapids, Iowa, for debtors.

Steven J. Pace, Cedar Rapids, Iowa, and Whyte & Hirschboeck S.C., Milwaukee, Wis., for Thorp Credit.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER REGARDING DEBTORS' MOTION FOR AUTHORITY TO USE CASH COLLATERAL

MICHAEL J. MELLOY, Bankruptcy Judge.

The matter before the Court involves Debtors' Motion for Authority to Use Cash Collateral. The Court, having reviewed the stipulated facts and having reviewed the arguments of counsel, now makes the following Findings of Fact, Conclusions of Law, and Order pursuant to F.R.B.P. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2).

### FINDINGS OF FACT

1. In 1983, Debtors granted, and Thorp perfected its security interest in Debtors' owned and afteracquired dairy cows, farm products and all proceeds thereof.

2. Debtors filed their voluntary Chapter 11 Bankruptcy Petition on April 11, 1985.

3. Through an agreement of the parties, Thorp received proceeds of certain post-petition milk production until July 31, 1985.

4. Thorp is undersecured. It has a perfected security interest in Debtors' milk produced prior to the filing of the Bankruptcy action and the post-petition proceeds thereof.

5. Debtors' offer of adequate protection includes establishing a separate account for the deposit of post-petition milk proceeds and granting Thorp a replacement lien in other inventory and assets of the Debtors.

6. Debtors intend to use the proceeds of the milk produced post-petition for feeding the livestock herd, and other necessary expenses in connection with the operation of the Debtors' farm including their own living expenses.

### DISCUSSION

Debtors' Motion for Authority to Use Cash Collateral clearly presents to the Court the issue of whether a pre-petition security interest in milk and its proceeds is effectively terminated by the filing of Debtors' Bankruptcy Petition. 11 U.S.C. § 552(a) provides:

Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

Section 552(b) provides in relevant part:

[I]f the debtor and an entity entered into a security agreement and if the security interest created by the security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Debtors concede Thorp has a perfected security interest in the dairy cows, milk produced by the cows, and its proceeds produced prior to their bankruptcy case. They further concede Thorp is entitled to the post-petition proceeds of milk produced prior to the bankruptcy case. However, Debtors contend the filing of the bankruptcy petition terminated Thorp's security interest in milk produced post-petition and the cash proceeds of the milk under § 552(a). Therefore, Debtors argue that their use of the milk produced post-petition and its proceeds are not entitled to adequate protection.

In support of their position, Debtors rely on cases in which the decisions terminating the creditor's security interest are based on an analysis of the legislative history of § 552.

The case of *In re Lawrence*, 41 B.R. 36 (Bkrtcy.D.Minn.1984), *aff'd.*, 56 B.R. 727 (D.Minn.1984), contains the following analysis of Congress' intent:

> The general rule of Section 552(a) is subject to a very narrow exception described in Section 552(b). That latter section limits the "cutoff" rule of Section 552(a) when the creditor's pre-petition security interest extends to proceeds or products of property acquired by the debtor before the commencement of the case. This exception was intended to protect a creditor's interest in *particular* pre-petition goods or collateral from being terminated by the filing of a bankruptcy petition. (emphasis supplied) The exception is a very limited one intended to cover the situation where a creditor holds a security interest in raw materials, and after the filing of a bankruptcy petition, the debtor changes their form by converting them into inventory. 124 Cong.Rec.H. 11,097–11,098 (Sept. 28, 1978); S. 17,414 (Oct. 6, 1978). In this case, the exception of Section 552(b) would protect the creditor's interest in the finished product.

The Court concludes with:

> There is no question in this Court's mind that milk produced post-petition or the proceeds of post-petition milk production are not subject to the Section 552(b) exception. To interpret 552(b) otherwise would result in the exception swallowing the rule. Section 552(b) was intended to protect a creditor's security interest in collateral existing pre-petition from being cut off midstream by a bankruptcy. Milk and proceeds existing pre-petition as well as post-petition proceeds resulting from milk produced pre-petition are subject to the Bank's security interest pursuant to Sections 552(b) and 363(c). However, milk produced post-petition is an asset coming into existence totally after the filing and not intended to be covered by the 552(b) exception.

*Lawrence*, 41 B.R. at p. 37.

Since Judge Connelly's decision in *Lawrence*, two other Minnesota cases have cited it with approval. *In re Serbus*, 48 B.R. 5 (Bkrtcy.D.Minn.1984) and *In re Jackels*, 55 B.R. 67 (Bkrtcy.D.Minn.1985). However, the facts in both of these cases are different from the case at bar. In *Serbus* and *Jackels*, the creditors claimed they were entitled to adequate protection of their pre-petition milk check assignments. In each of these cases, the Court decided that the creditors' interests in the milk check assignments were terminated by § 552(a) and were not governed by the exception found in § 552(b).

In further support of their position, Debtors cite *In re Pigeon*, 49 B.R. 657 (Bkrtcy.D.N.Dak.1985).

In *Pigeon*, the Court concluded that regardless of the creditor's arguments for a literal interpretation of Section 552(b), the legislative intent leads to one conclusion: Section 552(b) does not support a continuing security interest in farm products where those products are acquired by the debtor after applying for bankruptcy relief. *Pigeon*, 49 B.R. at p. 660. In support of this conclusion, the Court cited the following statement found in the legislative history:

> Section 552(b) represents a compromise between the House bill and the Senate amendment. Proceeds coverage, but not after-acquired property clauses, are valid under Title 11. 124 Cong.Rec.H. 11,097–11,098 (Sept. 28, 1978); S. 17,414 (Oct. 6, 1978).

*Pigeon*, 49 B.R. at p. 659.

The Court rationalized its conclusion by stating:

> ... The continuing interest in "products" contemplated under section 552 does not include by-products or fruits of the principal collateral held by the debtor. The term "products" under section 552(b) of the Bankruptcy Code must be limited to those instances where the nature of the creditor's collateral is altered

so substantially that the collateral is transformed into a new property. While milk may indeed be a farm product as set out under section 41–09–09(3) of the North Dakota Century Code, milk is not a product of livestock in a sense the livestock's identity has been subsumed by the creation of the milk. The legislative history of 11 U.S.C. § 552(b) supports this conclusion. *See In re Lawrence,* 41 B.R. 36, 37 (Bkrtcy.D.Minn.1984).

*Pigeon,* 49 B.R. at p. 660.

In contrast to *Lawrence* and its progeny, there is a line of decisions which hold that § 552(b) extends a creditor's lien to milk produced after the bankruptcy petition is filed. Rather than exploring the legislative history, these decisions apply § 552(b) in its literal sense. The emphasis of these cases is on the parties' security agreement and the nonbankruptcy law applicable to the facts presented.

The Court believes this latter analysis is correct. This analysis is based upon an interpretation of the Uniform Code section codified in the Iowa Code as Section 554.-9109(3). That code section defines farm products to include milk. This Court believes that reading Iowa Code § 554.9109(3) together with 11 U.S.C. § 552(b) leads to the conclusion that Thorp does have a continuing security interest in the milk produced by the cows which are the security for the creditor's loan.

This Court believes that the analysis set forth in the case of *In re Johnson,* 47 B.R. 204, 206 (Bkrtcy.W.D.Wisc.1985), correctly analyzes the interplay between the applicable Uniform Commercial Code sections and § 552(b) of the Bankruptcy Code. In that case, the Court found FmHA had a perfected security interest in farm products and their proceeds. A Wisconsin commercial code statute similar to Iowa Code section 554.9109(3) defines farm products to include milk. Therefore, the Court found FmHA had a perfected security interest in milk produced post-petition and its proceeds. (This case is also significant because it does not discuss whether FmHA's

security agreement contained an after-acquired property clause.) Other decisions which construed statutes nearly identical to Iowa Code section 554.9109(3) and which concluded that the creditor had a perfected security interest in milk produced post-petition include the following: *In re Rankin,* 49 B.R. 565, 570 (Bkrtcy.W.D.Mo.1985); *In re Nielsen,* 48 B.R. 274, 276 (Bkrtcy.D.N.Dak.1984) (*compare In re Pigeon, supra*); *In re Potter,* 46 B.R. 536, 538 (Bkrtcy.E.D.Tenn.1985); *Matter of Hollie,* 42 B.R. 111, 119 (Bkrtcy.M.D.Ga.1984); and *In re Beattie,* 31 B.R. 703, 713 (Bkrtcy.W.D.N.C.1983)).

In the case at bar, Debtor granted Thorp a security interest in owned and after-acquired livestock, farm products, dairy cows, and any and all products of livestock. Under applicable nonbankruptcy law, milk is specified as a farm product. Iowa Code § 554.9109(3). It is undisputed that Thorp has a perfected security interest in farm products and the proceeds thereof under Iowa Code § 554.9306. Thus, the Court must come to the conclusion that milk produced after the filing of the bankruptcy petition and the proceeds thereof are subject to Thorp's security interest.

Section 552(b) is unambiguous and its meaning is clear: when the security agreement so provides and applicable nonbankruptcy law permits, a pre-petition security interest which includes pre-petition products and their proceeds continues in the same products and proceeds after the commencement of the bankruptcy case.

Debtor also argues that the Court should still decide the milk produced post-petition is not subject to Thorp's security interest based on the equities of Debtors' case. *See,* § 552(b). In support of this argument, Debtors cite *In re Lawrence, supra; In re Serbus, supra;* and *In re Vanas,* 50 B.R. 988 (Bkrtcy.E.D.Mich.1985). In each case the court decided the lien did not attach to milk produced after the bankruptcy filing.

This Court is not inclined to make any blanket pronouncement on whether the "equities of the case" exception found in § 552(b) is to be applied in a given situa-

tion. Each case will have to be decided on its own merit. The cases cited by the Debtors in support of their position are factually different from the case at bar. In *Serbus*, the Court found the creditor was oversecured and adequately protected. In *Lawrence*, the creditor was oversecured but the court also considered the debtor's expenditure of time, labor and funds relative to the collateral within the context of the "fresh start" and "rehabilitative" themes of bankruptcy law. 41 B.R. at p. 38. In *Vanas*, the court also examined the debtor's expenditure of time, labor and funds within the "fresh start" context, and like the court in *Lawrence*, it terminated the debtor's interest in post-petition milk. In the case at bar, Thorp is undersecured. Moreover, there is no evidence before the Court at this time as to the Debtors' effort and money expenditure toward production and protection of the collateral (i.e., the milk).

Moreover, the Court believes that the issue of the Debtors' expenditure of time and effort can be more properly addressed in the context of the adequate protection to be afforded to the creditor for the use of the cash collateral produced by the sale of the milk. The production of milk and the resulting cash collateral are the result of a number of factors. The milk is produced from cows, in which Thorp has a secured interest. However, milk is not produced without the feed which is fed to the cows, which Thorp may or may not have a security interest in, the use of equipment and facilities, which Thorp may or may not have a security interest in, and the Debtors' own expenditure of time and labor. If the Debtors were to cease milking the cows and were to liquidate the dairy herd, the value of Thorp's collateral, i.e., the dairy herd, would decline rapidly. The value of a dairy herd is protected (and in many cases enhanced) only when the cows are being milked. Once the farmer quits milking the cows, the value of the milk cows diminishes rapidly.

As Judge Martin stated in *In re Johnson:*

The Johnsons [debtors] are continuing to operate their dairy farm as debtors in possession. By so doing they are minimizing the risk of the milk cows losing value during the time necessary to reorganize. There is no reason to believe that if they were to stop milking either secured creditor would receive as much.

*Johnson,* 47 B.R. at p. 209. The creditor, Thorp Credit, may be adequately protected by the Debtors' continued use of the dairy herd, milking of the cows, and his efforts towards effectuating a Plan of Reorganization. This matter was submitted to the Court on stipulated facts, wherein the parties stipulated as to the security interest held by Thorp Credit. The question presented to the Court was the legal issue of whether the milk produced by the cows, post-petition, and the cash collateral from that milk was subject to Thorp's security interest. The Court, having answered that question in the affirmative, the parties must now come to some resolution on the issue of what adequate protection, if any, is to be provided to Thorp for the Debtors' use of that cash collateral.

If the parties cannot agree upon appropriate adequate protection, either party may request that this matter be reset for a hearing.

### CONCLUSIONS OF LAW

1. Thorp Credit, Inc., has a valid security interest in the milk produced since July 31, 1985, and the proceeds thereof, pursuant to 11 U.S.C. § 552(b) and Iowa Code § 554.9109(3).

2. Thorp Credit, Inc., is to be provided adequate protection for the Debtors' use of cash collateral.

### ORDER

Debtors' Motion for Authority to Use Cash Collateral is approved, subject to the Debtors providing adequate protection to Thorp Credit, Inc. The Debtors are ordered to provide a full accounting to Thorp Credit within fifteen (15) days of the date of this Order as to all cash collateral used and expended by the Debtors since the date

of filing. The parties are to attempt to come to an agreement as to adequate protection. If the parties are unable to agree as to adequate protection, the attorneys for Thorp Credit, Inc., shall advise the Clerk of this Court that this matter shall be set for further hearing on the issue of adequate protection.