CITIZENS STATE BANK OF LENA, Plaintiff-Appellee, v. CURTIS L. DIEMER *et al.*, Defendants-Appellants.

Second District   No. 2—85—0941

Opinion filed June 24, 1986.

Curtis L. Diemer and Sharon P. Diemer, both of Orangeville, for appellants, *pro se.*

Peter D. McClanathan, of Schmelzle & Kroeger, of Freeport, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants, Curtis and Sharon Diemer, appeal from the judgment of the circuit court of Stephenson County which found that the plaintiff, Citizens State Bank of Lena (bank), held a security interest in the proceeds of milk sold by the defendants and awarded the bank those proceeds.

Curtis and Sharon Diemer executed two notes in the amount of $250,424.73 and $4,575, respectively, with the bank. Both notes were dated March 30, 1984, and due to mature one year later. In addition, both notes stated that they were secured, not only by a separate security agreement dated March 24, 1982, but a security agreement described in the note as well. The security agreement described in each note stated that "the Borrower hereby grants to the Lender a Security Interest under the Uniform Commercial Code" in certain described collateral, which included inventory, equipment, farm products, accounts and other rights to payment, and a real estate mortgage. Curtis and Sharon Diemer signed both notes. The separate security agreement, dated March 24, 1982, however, was signed only by Curtis Diemer. In addition, the bank filed a financing statement in the recorder's office of Stephenson County on May 7, 1982. This financing statement also was signed only by Curtis Diemer. Subsequently, both notes came due and were not paid.

On November 5, 1985, at the hearing on the bank's complaint to recover the monies due, the trial court took judicial notice of the following facts. The bank brought a replevin action against Diemers, and the trial court entered a replevin order in favor of the bank on August 22, 1985. Repossession of the Diemers' property took place the next day, August 23, 1985. On September 12, 1985, the trial court granted the final order of possession in favor of the bank. Both the trial court, as well as this court, denied the Diemers' motion to stay the enforcement of the replevin order.

Prior to the repossession on August 23, 1985, the Diemers had delivered milk for sale to Midwest Dairymen's Co. (Midwest), a defendant in this action in the trial court, but not a party to this appeal. At the time of repossession, Midwest owed the Diemers $4,048.36 for milk purchased from August 1 through 22, 1985. Midwest currently holds these proceeds pending the outcome of this litigation.

Following the repossession, the bank sold the items of collateral in October 1985. After the sale there remained a deficiency of approximately $150,000. In its complaint, the bank alleged that based

on its security interest in all equipment, livestock, crops, and other personal property of the Diemers, including products and proceeds, Midwest should pay over to the bank all proceeds relating to the milk delivered to Midwest produced from livestock owned by the Diemers.

The trial court found that the bank established a valid security interest in the milk proceeds which was superior to any rights of the Diemers and ordered that Midwest pay the bank the monies it currently held. The Diemers then appealed.

■ The sole issue on appeal is whether the trial court correctly found that the bank held a security interest in proceeds of milk sold by the Diemers and was entitled to receive those proceeds. The Diemers argue that the bank does not have a valid security interest in the subject proceeds for the reason that Sharon Diemer's name is absent from the security agreements dated March 24, 1985, and October 30, 1982, as well as the financing statement filed May 7, 1982. Specifically, the contend that, pursuant to section 9—402 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 9—402), "the financing statement must be signed by the debtor," and thus, they conclude, as Sharon Diemer's signature does not appear on the above mentioned documents, the security interest is not valid and the bank has no claim to the proceeds.

Under section 9—201 of the Uniform Commercial Code, a security agreement is effective according to its terms between the parties. (Ill. Rev. Stat. 1983, ch. 26, par. 9—201.) Pursuant to sections 9—203(1)(a), (b), and (c), a security agreement becomes enforceable against the debtor with regard to the collateral when the following occurs:

"(a) *** [T]he debtor *** sign[s] a security agreement which contains a description of the collateral ***; and

(b) value has been given; and

(c) the debtor has rights in the collateral." (Ill. Rev. Stat. 1983, ch. 26, pars. 9—203(1)(a) through (1)(c).)

In the present case, both debtors, the Diemers, signed notes which also contained security agreements. The bank gave value to the Diemers in the form of a credit line and renewal of previous notes. The debtors, Curtis and Sharon Diemer, owned the cows from which the milk was produced. Pursuant to section 9—203(2), at this time, the bank's security interest attached to the collateral. Ill. Rev. Stat. 1983, ch. 26, par. 9—203(2).

The security agreements incorporated into each note covered all farm products of the Diemers, including, but not limited to, all poul-

try and livestock and their young, products thereof and produce thereof. Thus, the bank held a security interest in the milk produced by the Diemers' cows.

In addition, unless otherwise agreed, pursuant to section 9—203(3), a security agreement gives the secured party the rights to proceeds provided by section 9—306 of the Uniform Commercial Code. (Ill. Rev. Stat. 1983, ch. 26, par. 9—203(3).) Section 9—306 defines "proceeds" as "whatever is received upon the sale, exchange, collection or other disposition of collateral." (Ill. Rev. Stat. 1983, ch. 26, par. 9—306(1).) A security interest continues in collateral notwithstanding the sale, exchange, or other disposition and also continues in any identifiable proceeds, including collections received by the debtor. Ill. Rev. Stat. 1983, ch. 26, par. 9—306(2).

■■ Thus, the bank's security interest is established as existing first, in the livestock; second, in the products of the livestock, including the milk; and finally, in the proceeds of the sale of the livestock products. An additional right to the milk proceeds is found in a separate paragraph of the security agreement in the notes, which gave the bank a security interest in "every right of the borrower to the payment of money arising out of a sale or other disposition of goods or other property by the borrower".

The Diemers argue that the bank's security interest did not attach to the milk proceeds because Sharon Diemer did not sign the separate security agreements or the financing statement. This argument, however, confuses the concepts of attachment and perfection of a security interest. The Diemers correctly state that in order to perfect a security interest against third party creditors, a financing statement must be filed and signed by all debtors. However, as the trial court correctly pointed out, the main purpose of the financing statement is to protect a creditor's priority over all other third party creditors and does not have any bearing on the direct relationship between a debtor and a creditor with respect to a promissory note past due.

■■ In this case, the trial court correctly found that the security agreement within each note sufficiently created a security interest for the bank in the described items of the Diemers, as well as the milk proceeds. The separate security agreement, which was signed only by Curtis Diemer, is merely duplicative of the rights granted to the bank in the security agreements incorporated into the notes themselves. Attachment of the bank's security interest, so as to become enforceable against the Diemers, occurred when the security agreements in the notes were signed, value was given, and the bank

acquired rights in the collateral. The fact that Mrs. Diemer did not sign the separate security agreement or the financing statement is irrelevant to attachment.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

SCHNAKE and STROUSE, JJ., concur.