In re Herbert J. WIEGMANN and Cecelia C. Wiegmann, Debtors.

WILKE TRUCK SERVICE, INC. and Breese Grain Co., Plaintiffs,

v.

Herbert J. WIEGMANN and Cecelia C. Wiegmann, and Landmark Bank of Highland, Defendants.

Bankruptcy No. 88–30498.
Adv. No. 88–0185.

United States Bankruptcy Court, S.D. Illinois.

Jan. 20, 1989.

Robert T. Bruegge, Breese, Ill., for plaintiffs.

Steven N. Mottaz, Alton, Ill., for debtors.

Craig A. Smith, St. Louis, Md., for Landmark Bank.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

Herbert and Cecelia Wiegmann ("debtors") are dairy farmers with an indebtedness in excess of $400,000.00 owed to Landmark Bank of Highland, formerly Eagle Bank ("Bank"). As security for this debt, debtors granted to the Bank a security interest in, *inter alia,* livestock, "[a]ll products of livestock and/or poultry given as collateral hereunder, including all eggs, *milk* and wool produced therefrom ... and all cash and non-cash proceeds from the sale ... or other disposition of any of said goods and property...." (emphasis added). Pursuant to a pre-petition milk assignment, debtors also assigned to the Bank 100% of all milk proceeds payable from Mid–America Dairymen, Inc. Debtors subsequently filed their Chapter 12 bankruptcy petition on June 24, 1988.

Under the terms of the milk assignment, debtors have the right to unilaterally terminate the assignment upon thirty days written notice. However, in order to provide the Bank with adequate protection, debtors have continued to allow the Bank to deduct from the milk assignment proceeds, debtors' monthly obligations to the Bank. The Bank deposits any remaining milk income into debtors' checking account for payment of necessary living expenses and operating costs.

In July 1988, two unsecured creditors, Wilke Truck Service, Inc. and Breese Grain Company ("plaintiffs"), filed a Motion to Terminate Milk Assignment. The motion requests the Court to terminate the milk assignment between debtors and the Bank and further requests that all post-petition milk income be segregated and deposited in a separate account, apparently for eventual payment to the unsecured creditors.

Plaintiffs do not dispute the validity of the Bank's security interest. They claim, however, that the Bank's security interest extends only to milk produced pre-petition, and that under section 552(a) of the Bankruptcy Code, any milk that was produced post-petition (and any proceeds of post-petition milk) are not subject to the Bank's security interest.

Section 552 provides as follows:

(a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

(b) Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, off-

spring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552. Under subsection (a), "if a security agreement is entered into before the commencement of the case, then property that the [bankruptcy] estate acquires is not subject to the security interest created by a provision in the security agreement extending the security interest to after-acquired property." *Smith v. Dairymen, Inc.*, 790 F.2d 1107, 1111 (4th Cir. 1986). Subsection (b), however, provides an important exception. If the property acquired by the estate after the filing of a bankruptcy petition is the "proceeds, product, offspring, rents or profits" of secured pre-petition property, then such proceeds, product, offspring, rents or profits remain subject to the security interest.

The determinative issue in the present case is whether milk that is produced post-petition constitutes the "product" of secured pre-petition livestock within the meaning of section 552(b). There is a split of authority with regard to this issue.

Those cases that have held milk is not the "product" of a cow, but rather newly acquired property coming into existence after the filing of the bankruptcy petition, are based on an analysis of the legislative history of section 552. These decisions hold that the "product" exception of section 552(b) was intended to cover only those situations "where the nature of the creditor's collateral is altered so substantially that the collateral is transformed into a new property." *In re Pigeon*, 49 B.R. 657, 660 (Bankr.D.N.D.1985). The case of *In re Lawrence*, 41 B.R. 36 (Bankr.D.Minn.1984), *aff'd* 56 B.R. 727 (D.Minn.1984), for example, offers the following analysis:

The general rule of Section 552(a) is subject to a very narrow exception described in Section 552(b).... This exception was intended to protect a creditor's interest in *particular* prepetition goods or collat-

eral from being terminated by the filing of a bankruptcy petition. The exception is a very limited one intended to cover the situation where a creditor holds a security interest in raw materials, and after the filing of a bankruptcy petition, the debtor changes their form by converting them into inventory. 124 Cong. Rec.H. 11,097–11,098 (Sept. 28, 1978); S. 17, 414 (Oct. 6, 1978)....

There is no question in this Court's mind that milk produced post-petition or the proceeds of post-petition milk production are not subject to the Section 552(b) exception. To interpret 552(b) otherwise would result in the exception swallowing the rule. Section 552(b) was intended to protect a creditor's security interest in collateral existing pre-pretition from being cut off midstream by a bankruptcy. Milk and proceeds existing pre-petition as well as post-petition proceeds resulting from milk produced pre-petition are subject to the Bank's security interest pursuant to Sections 552(b) and 363(c). However, milk produced post-petition is an asset coming into existence totally after the filing and not intended to be covered by the 552(b) exception.

*Id.* at 37–38 (emphasis in original). *Accord In re Flowers*, 78 B.R. 774 (Bankr.D.S.C. 1986); *In re Jackels*, 55 B.R. 67 (Bankr.D. Minn.1985); *In re Pigeon*, 49 B.R. 657 (Bankr.D.N.D.1985); *In re Serbus*, 48 B.R. 5 (Bankr.D.Minn.1984).

Another line of decisions holds that milk produced post-petition is a "product" of secured pre-petition livestock within the meaning of section 522(b). "Rather than exploring the legislative history, these decisions apply § 552(b) in its literal sense." *In re Underbakke*, 60 B.R. 705, 708 (Bankr.N.D.Iowa 1986). The emphasis of these cases is on the parties' security agreement and applicable nonbankruptcy law. *Id.* For example, in *Smith v. Dairymen, Inc.*, 790 F.2d 1107 (4th Cir.1986), the Court rejected the notion that the concept of "products" encompasses the very limited situation where the collateral is altered so substantially that it is effectively transformed into new property. "While the situation thus described is offered in the legis-

lative history as an example of the application of § 552(b), we do not see that subsection's application to 'products' of pre-petition property as strictly limited to such situations." *Id.* at 1112. The court stated that in order to qualify as an exception under section 552(b), three conditions must be met: "(a) there must be a pre-petition security agreement, (b) the security agreement by its terms must extend to the debtor's pre-petition property and to proceeds, product, offspring, etc. of such property, and (c) applicable non-bankruptcy law, i.e., state law, must permit the security agreement to extend to such after-acquired property." *Id.* at 1111–12. The court found that all three conditions had been satisfied and specifically held that the milk produced post-petition (and the monies derived from its sale) came within the section 552(b) "product" exception and were therefore subject to the pre-petition lien created by the particular security agreement in that case.

In addition to the decision from the Fourth Circuit, several lower court decisions have likewise held that post-petition milk and milk proceeds come within the section 552(b) exception. These cases have held, for example, that where the security agreement extends to "products and proceeds" and where state law defines farm products to include milk, any pre-petition security interest covering after-acquired farm products and proceeds extends to milk produced post-petition. *See, e.g., In re Underbakke,* 60 B.R. 705 (Bankr.N.D. Iowa 1986); *In re Rankin,* 49 B.R. 565 (Bankr.W.D.Mo.1985); *Matter of Johnson,* 47 B.R. 204 (Bankr.W.D.Wis.1985). *See also In re Nielsen,* 48 B.R. 274 (D.N.D. 1984); *In re Potter,* 46 B.R. 536 (Bankr.E. D.Tenn.1985).

■ The Court agrees with the analysis set forth in these cases and holds that to the extent the security agreement so provides and applicable nonbankruptcy law permits, section 552(b) of the Bankruptcy Code extends a creditor's lien to milk produced post-petition and to income derived from its sale.

■ In the present case, the security agreement 1) contains an after-acquired property clause, 2) creates a lien on "all products of livestock ... given as collateral...." and 3) expressly includes milk as a "product." (As previously noted, the unsecured creditors in this case do not, in fact, contest the validity and perfection of this security interest.) Under Illinois law, after-acquired property clauses are valid and enforceable. Ill.Rev.Stat. ch. 26, ¶ 9–204(1). Additionally, Illinois law defines farm products to include milk. Ill. Rev.Stat. ch. 26, ¶ 9–109(3). *See also Citizens State Bank of Lena v. Diemer,* 144 Ill.App.3d 513, 98 Ill.Dec. 897, 494 N.E.2d 1224 (1986) (creditor holding security interest in debtors' livestock and products of livestock had security interest in milk and in proceeds from the sale of milk). The Court finds, therefore, that section 552(b) of the Bankruptcy Code, when read in conjunction with the security agreement and applicable state law, extends the Bank's lien in this case to milk produced post-petition and to the proceeds from its sale.

■ Plaintiffs alternatively contend that, based on the equities of the case, the Court should hold that the milk produced post-petition is not subject to the Bank's security interest. The "equity exception" of section 552(b) allows the Court to override otherwise valid security interests in post-petition proceeds, products, offspring, rents or profits when equitable. "The equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankrupt estate (assets that would otherwise go to the general creditors) to increase the value of the collateral." *J. Catton Farms v. First National Bank of Chicago,* 779 F.2d 1242, 1246 (7th Cir.1985). As one court has more fully explained:

[The equity] exception requires the court to balance 'the expenditures of time, labor, and funds relating to the collateral, the relative position of the secured party, and the overall rehabilitative theme of bankruptcy law.' With rare exception, the courts have modified security interests only when modification would assist the debtor's reorganization efforts. Further, the courts have been more inclined

to assist the debtor through the Section 552(b) equity exception where the creditor whose interest will be modified is oversecured.

*In re Groves Farms, Inc.,* 64 B.R. 276, 278 (Bankr.S.D.Ind.1986) (citations omitted).

Plaintiffs urge the Court to apply the "rule" formulated by the court in *In re Delbridge,* 61 B.R. 484 (Bankr.E.D.Mich. 1986). The court in *Delbridge* developed a mathematical equation for courts to follow when exercising their equitable powers under section 552(b). That rule is explained in *Delbridge* as follows:

> The lender is entitled to the same percentage of the proceeds of the post-petition milk as its capital contribution to the production of the milk bears to the total of the capital and direct operating expenses incurred in producing the milk. Because the parties are in a direct mathematical relationship, the rule should be easy to apply. Very simply, the larger is the lender's capital contribution to the venture, the larger its share of the proceeds ought to be. Conversely, if the farmer's input in the venture is great, the "equities of the case" compel that his share of the proceeds likewise be great.

*Id.* at 491. The Court believes, however, that the "equities exception" requires an analysis of the particular facts in each individual case, and is therefore not inclined to adopt a blanket rule or formula that would apply in all cases. *Accord In re Underbakke,* 60 B.R. at 708–09; *Matter of Johnson,* 47 B.R. at 207. Even if the Court were to adopt the holding of *Delbridge,* there is no evidence before the Court at this time as to the total expenses incurred in the production of milk, thus making it virtually impossible to apply the *Delbridge* rule. Indeed, there is little, if any, evidence to show that the equities of this case favor plaintiffs.

Accordingly, for the reasons stated, plaintiffs' Motion to Terminate Milk Assignment is DENIED.